**FILED**

JUN - 4 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GEORGE CANNING<br>323 Nickels Dr., SW<br>Leesburg, VA 20175<br><br>and<br><br>JEFFREY STEINBERG<br>106 Mayfair Drive, NE<br>Leesburg, VA 20176<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE<br>The Executive Office<br>Office of the Legal Adviser<br>2201 C Street, NW<br>Room 5519<br>Washington, DC 20520-6310<br><br>Defendant. | Case: 1:13-cv-00831<br>Assigned To : Sullivan, Emmet G.<br>Assign. Date : 6/4/2013<br>Description: FOIA/Privacy Act |

COMPLAINT FOR INJUNCTIVE RELIEF
(Freedom of Information Act 5 U.S.C. 552)

Jurisdiction and Venue

1.    This is an action under the Freedom of Information Act
("FOIA"), 5 U.S.C. 552, as amended, to order the production of
agency records which are being improperly withheld from
plaintiffs.

2.    This Court has jurisdiction over this action pursuant
to 5 U.S.C. 552(a)(4)(B), and venue is proper.

3.    Plaintiff George Canning, a co-requester of the
records, is a resident of Leesburg, Virginia.

1

4.    Plaintiff Jeffrey Steinberg, a co-requester of the
records, is a resident of Leesburg, Virginia.

5.    Defendant U.S. Department of State ("State") is an
agency of the United States, and has possession and/or control of
the records sought by plaintiff.

6.    The records requested are records created and
maintained by defendant.  Upon information and belief, the
requested records are still under the jurisdiction and control of
the Department of State.

7.    Plaintiffs have exhausted their administrative remedies
as provided for in 5 U.S.C. 552(a)(6).

8.    Pursuant to the FOIA, 5 U.S.C. 552(a)(3), plaintiffs
have a right of access to the information they seek, and there is
no legal basis for defendant's denial of said right.  Defendant
is thus unlawfully withholding the requested records in violation
of the FOIA.

## Introduction

9.    This lawsuit concerns information requested under the
FOIA by plaintiff George Canning, who was subsequently joined in
his request by plaintiff Jeffrey Steinberg.  The records sought
concern a controversial issue of United States foreign policy:
relations between the United States and political forces in Arab
and other Muslim countries, and particularly between the United
States and the Muslim Brotherhood.  Plaintiffs believe, through

-2-

various press accounts of unknown reliability, that an important
step in the creation of the present policy, was President Obama's
Presidential Study Directive 11 (PSD-11).

10.  To the best of plaintiffs' knowledge, although PSD-11
was provided to members of the press, the text of it has never
been made public.  Descriptions of PSD-11 and the policy that
developed from it range from PSD-11 having anticipated what
became known as "Arab Spring" and developed policy in
anticipation of it, to allegations that the policy which emerged
centered on an accommodation or even alliance with the anti-
modernist Muslim Brotherhood at the expense of political forces
with views more in keeping with American values reflected in the
Constitution of the United States.  Plaintiffs seek information
from the Department of State, to clarify and provide to the
public, the actual facts of this aspect of United States foreign
policy.

11.  At issue in the first instance in this case, is whether
defendant State, having failed to provide either the information
requested and/or justification for withholding it, shall be
compelled to conduct expedited processing of plaintiffs' FOIA
request.  When defendant makes a substantive response to the FOIA
request, some or all of any information it chooses to withhold
will then be at issue.

-3-

## Plaintiffs' FOIA Request

12.   By letter dated December 29, 2012, plaintiff George

Canning sent an FOIA request to defendant Department of State

("FOIA request"), seeking

    *   a copy of PSD-11, as issued by the President;

    *   information created or compiled by State for internal
usage or submission to the President, in the creation of
PSD-11;

    *   information created or compiled by State which was
generated pursuant to PSD-11;

    *   reports created or compiled by State from 2005 to
present, concerning contacts or interviews with, or
otherwise about, individuals identified as leaders of the
Muslim Brotherhood, or otherwise analyzing the Muslim
Brotherhood's role in Muslim nations.

(See Exhibit A, attached hereto.)

13.   The FOIA request sought "expedited treatment" by

defendant, and addressed the "compelling need" for it to do so,

based on the requirements described in the "U.S. Department of

State Information Guide."   (Id., page 2.)

14.   The FOIA request sought a waiver of fees to be incurred

in the processing of the request.   (Id., pages 2-3 and

attachments including APPENDIX: "Fee Waiver Justification

Factors.")

15.   By letter dated January 11, 2013 to plaintiff Canning,

State (a) acknowledged the FOIA request, assigning it Case

Control Number F-2013-00832, (b) denied the request for expedited

-4-

treatment, and (c) in an attachment, notified Canning that a fee waiver had been granted. (See Exhibit B, attached hereto.)

16. By letter dated January 22, 2013, plaintiff Canning appealed the denial of expedited processing ("appeal letter"). The appeal letter noted that some of the issues involved in a request for expedited processing are also involved in a request for fee waiver. (See Exhibit C, attached hereto.)

17. The appeal letter also asked, if plaintiff Canning's ability to disseminate the information were at issue in the denial of expedited processing, that Jeffrey Steinberg, an editor and weekly writer for *Executive Intelligence Review* magazine, be deemed a co-requester in the FOIA request. The appeal letter enclosed a letter from Jeffrey Steinberg which joins in the FOIA request, and particularly in the request for expedited treatment. (Id.)

18. By letter dated April 25, 2013 to plaintiff Canning, State upheld the initial decision to deny expedition in the processing of the FOIA request. (See Exhibit D, attached hereto.)

### Prayer For Relief

WHEREFORE, Plaintiffs pray this Court:

(1) Take jurisdiction of this case;

(2) Order defendant to proceed with processing the FOIA request on an expedited basis;

-5-

(3)   Order defendant to make an adequate search for the records requested;

(4)   Order defendant to permit access to all responsive records;

(5)   Order defendant to provide copies of the responsive records at no cost to plaintiff;

(5)   Award plaintiffs their costs, pursuant to 5 USC § 552 (a)(4)(E); and

(6)   Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:   June 2, 2013

GEORGE CANNING
60 Sycolin Road
Leesburg, VA 20175
(703) 434-1904

Co-Plaintiff Pro Se

JEFFREY STEINBERG
60 Sycolin Road
Leesburg, VA 20175
(703) 777-9451

Co-Plaintiff Pro Se

-6-

60 Sycolin Rd.
Leesburg, VA 20175
December 29, 2012

Office of Information Programs and Services
A/GIS/IPS/RL
Department of State, SA-2
Washington, DC 20522-8100
Re: Freedom of Information Act Request

To whom it may concern:

This is a request under the Freedom of Information Act, as amended (5 U.S.C. 552). I request that a search be made as more fully described below and that access to or copies of documents and other information be provided as follows. Further, I request expedited handling, and a fee-waiver, for the reasons I discuss below.

I request certain information created and/or compiled by the Department of State, concerning Presidential Study Directive 11 (PSD-11"). David Ignatius described PSD-11 in a March 6, 2011 *Washington Post* column (attached, with the relevant paragraphs marked), as anticipating change soon to emerge in the Arab world. The column quotes from PSD-11, including a tasking of advisers to manage emerging risks.

* A copy of Presidential Study Directive 11, as issued by President Obama.

* Documents and other information created or compiled by the State Department which were utilized internally to the State Department and/or in submission to the President, in the creation of PSD-11.

* Documents and other information created or compiled by the State Department which were generated pursuant to the mandates of PSD-11.

* All reports created or compiled by the State Department from 2005 to present, concerning contacts or interviews with, or otherwise about, individuals identified as leaders of the Muslim Brotherhood, or otherwise analyzing the Muslim Brotherhood's role in Muslim nations.

In processing this request, please make a complete and thorough search of all filing systems and locations which are likely to contain the requested information, including but not limited to the Office of the Secretary of State, the Special Coordinator for Middle East Transitions, and any other office which represents the State Department in the inter-agency task force on Middle East Transformation.

All documents and other information should be produced with administrative markings and all reports should include the administrative pages.

Please place any "missing" files pertaining to this request on "special locate" and advise me that you have in fact done this.

If documents and/or other information are/is denied, in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole record denied. Please provide a complete itemized inventory and a detailed factual justification of total or partial denial of

-2-

documents and/or other information.  Specify the number of remaining pages in each record and the total number of pages pertaining to this request.

In excising material, please "black out" the material rather than "white out" or "cut out."  I expect, as provided by the Freedom of Information Act, that the remaining non-exempt portions of all documents and other information will be released.

### Expedited Treatment

I here refer to the "U.S. Department of State Information Access Guide" from your website, at pages 9-10, which says that an FOIA request may be processed out of the usual order, if the requester can demonstrate a compelling need for the information.  The "Access Guide" lists four circumstances of compelling need, one of which the requester must demonstrate.  I state the compelling need in this FOIA request is described in the fourth circumstance, i.e.:

> The information is urgently needed by an individual primarily engaged in publicizing information in order to inform the public concerning actual or alleged government activity.  News media requesters would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public, not just a particular segment or group.

The description further notes that "(a) Urgently needed means that the information has a particular value that will be lost if not distributed quickly.  Ordinarily this means a breaking news story of general public interest."

As to the element of "publicizing" the information:  I am a researcher for LaRouche Political Action Committee and *Executive Intelligence Review* magazine, both of which are published on the internet (at, respectively, www.larouchepac.com and www.larouchepub.com) and carry extensive news and commentary on policy matters, including foreign policy.

PSD-11 and the other information I have requested (if it exists) is self-evidently U.S. government activity.

As to the "urgently needed" element, it is equally evident that U.S. policy toward the Arab (and more broadly, the Muslim) world is a matter of great and growing controversy, in light of the U.S. participation in the overthrow of Qaddaffi, the civil war in Syria with major participation of al Qaeda related forces, the attack on the consulate in Benghazi, and the emergence of an Egyptian constitution and government dominated by the Muslim Brotherhood, to name only few particulars.  Some commentators have suggested, that PSD-11 was instrumental in the United States Government reaching an accommodation with the Muslim Brotherhood, as a perceived alternative to the coming-to-power of radical pan-Salafist forces such as al Qaeda.  In the view of many, including me, the trends involved are taking the United States ever-closer to a new and wide war in the Middle East.  It is therefore vital, that the information I seek in this request be made available to the public as quickly as possible, to contribute to the ongoing debate over U.S. Mideast policy.

### Fee Waiver

I believe that this request qualifies for a waiver of fees since the release of the requested information will primarily benefit the general public and will be of public interest.  Because of its

- 3 -

length, I address the information described at pages 20-21 of the "Access Guide," in an Appendix to this letter.

If a fee waiver is not granted, please consult me before proceeding if the fee is in excess of $25. I believe that my discussion above qualifies me in the category of "freelance journalist;" because of my relation to the news and commentary functions of the LaRouche PAC and *EIR* websites. I reserve all rights to recover any money paid for fees not waived.

If you have any questions, please contact me at the above address, or by email and grcanning@live.com.

As required by the Act as amended, I shall expect a response from you within twenty working days.

Thank you for your cooperation in this matter.

Sincerely,

George Canning

# The Washington Post

## Obama's low-key strategy for the Middle East

By David Ignatius
Sunday, March 6, 2011; A21



President Obama has been so low-key in his pronouncements about events in Egypt and Libya that it's easy to miss the extent of the shift in U.S. strategy. In supporting the wave of change sweeping the Arab world, despite the wariness of traditional allies such as Israel and Saudi Arabia, Obama is placing a big bet that democratic governments will be more stable and secure, and thereby enhance U.S. interests in the region.

My own instinct, as someone who has been visiting the Arab world for more than 30 years, is that Obama is right. But given the stakes, it's important to examine how the White House is making its judgments - and whether intelligence reporting supports these decisions.

Though the White House's response to these whirlwind events has sometimes seemed erratic, the policy, which has been evolving for many months, goes to the core of Obama's worldview. This is the president as global community organizer - a man who believes that change is inevitable and desirable, and that the United States must align itself with the new forces shaping the world.

An Israeli official visiting Washington last week sounded a note of caution: "We are too close to the eye of the storm to judge," he said. "We need to be more modest in our assessments and put more question marks at the end."

But the Obama White House doesn't feel it has the luxury of deferring judgment; history is moving too fast. Says one official, "It's a roll of the dice, but it's also a response to reality." If Obama has seemed low-key, he explains, it has been a calculated "strategic reticence" to send the message: This is your revolution; it's not about us.

The roots of the policy shift go back to Obama's first days in office and his feeling that America's relationship with the Arab world was broken. Though Obama seemed to be accommodating the region's authoritarian leaders, in August 2010, he issued Presidential Study Directive 11, asking agencies to prepare for change.

This document cited "evidence of growing citizen discontent with the region's regimes" and warned that "the region is entering a critical period of transition." The president asked his advisers to "manage these risks by demonstrating to the people of the Middle East and North Africa the gradual but real prospect of greater political openness and improved governance."

Six months later, street demonstrations were toppling autocratic leaders in Tunisia and Egypt, who looked in vain for support from Washington. Obama didn't come to the autocrats' rescue because he believed the transformations were positive developments. "We have a core interest in stability through

political and economic change. The status quo is not stable," explains Ben Rhodes, a deputy national security adviser.

The democratic youth movement sweeping the Arab world offered an "alternative narrative" to the versions of Islamic revolution put forward by Iran and al-Qaeda, says Rhodes. If this change scenario can succeed, threats to America will be reduced.

The White House studied past democratic transitions in Indonesia, the Philippines, Serbia, Poland and Chile for "lessons learned." Officials noted that last week national security adviser Tom Donilon was reading former secretary of state George Shultz's account of the peaceful ouster of Ferdinand Marcos in the Philippines.

This review has led U.S. officials to conclude that countries need to: bring the opposition quickly into the transition to achieve "buy-in"; make fast changes that people can see, such as freeing political prisoners; and sequence events, putting the easiest first, so that presidential elections precede parliamentary balloting and detailed rewriting of the constitution.

How well does this idealistic agenda match up with ground truth? In interviews last week, intelligence analysts said that Islamic extremists don't seem to be hijacking the process of change. There are near-term tactical dangers, said one counterterrorism analyst, such as the escape of prisoners in Egypt and the potential weakening of the intelligence service there. But this official says there's no evidence that al-Qaeda has been able to take advantage of the turmoil. It took a week for Ayman al-Zawahiri, the group's No. 2 official, to publish his windy and out-of-touch analysis of events in Egypt.

Change will have its downside, but a second U.S. intelligence analyst offers this estimate: "This is a world we can live with. Our relationship with Egypt may be different and rockier, but I don't think it will be inherently hostile." As for the much-feared Muslim Brotherhood, it is currently planning to run parliamentary candidates in only 150 of Egypt's 454 districts, and no candidate for president.

**Post a Comment**

View all comments that have been posted about this article.

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post

APPENDIX To FOIA Request by George Canning:

Fee Waiver Justification Factors

I here refer to the "U.S. Department of State Information Access Guide" from your website, at pages 18-22.

**a. State why you believe the subject matter of your request concerns the operations or activities of the Department of State.**

PSD-11 concerns policy-making and -implementation of United States foreign policy, in which the Department of State assists the President.

**b. From what other sources have you attempted to obtain this information? Have you tried to obtain this information from the Foreign Relations of the United States Series, the National Archives and Records Administration, or public libraries? Demonstrate the absence of the requested information from the public domain.**

I have sought this information with internet searches (a) in the Federal Register website (as to PSD-11 itself), (b) on the websites of the Department of State and the White House, and (c) Google and Google News searches more generally, on Presidential Study Directive 11. I have found nothing, except Google "hits" which brought up items such as the attached Ignatius article, including some which I regard as having questionable reliability.

**c. Provide a summary of your educational background and work experience, particularly in the field of foreign affairs, and your expertise in the subject area of your request.**

I have a B.A. in history from Brown University. My "work" activity from the mid-1970s to the late 1970s centered on policy-discussion with members of the public, as a member of the "LaRouche movement." Subsequently, my work with the LaRouche movement revolved around assisting attorneys in civil rights actions, and the criminal prosecutions in the late 1980s. From the early 1990s to the present, I have been extensively involved in FOIA research and litigation of my own and of colleagues. One of my FOIA cases sought under the District of Columbia's FOIA, documents concerning the shutdown of D.C. General Hospital, and specifically the "due diligence" report on the institution replacing it, and I litigated for the documents *pro se* in U.S. District Court. In her opinion in the case, Judge Gladys Kessler wrote,

> ... the Court cannot help noting that the financial position of Greater Southeast Community Hospital, and its relatively new owner, Doctors Community Healthcare Corp., are of extraordinary significance to the plight of poor people seeking medical care in the District of Columbia. Both these medical providers are now in bankruptcy, and in active litigation before the Bankruptcy Court. ...It may well be that if the documents being sought in this case had been released by the District of Columbia Government when they were first prepared in March and April, 2001, at a time when the Legislate and Executive Branches of the District of Columbia Government were weighing the wisdom of granting Greater Southeast the leading role in running the City's new privatized indigent care

-2-

system, the citizens of the District of Columbia would not be in the dire straits they now find themselves in.

(See attached EIR Editorial quoting the opinion; available at http://www.larouchepub.com/eiw/public/2003/eirv30/eirv30n11.pdf (Page 40)

See also, reported opinions of *Billington v. DOJ*, *Welsh and Kronberg v. DOJ*, and *Jeffrey Steinberg v. DOJ* in the Federal Supplement and the Federal Reporter, in which I assisted the FOIA-requester plaintiffs. Particularly since the 9/11 attacks and the Bush Administration's response, I have been involved in studying and providing analysis and debate, on issues of war and peace, and civil rights of Americans in the context of war.

**d. Expand on your ability and intent to disseminate the information requested, e.g., Have you published or disseminated information in this or related fields in the past? Is the information requested to be used in a specific article or paper currently being prepared? When is the article to be published or the program to be aired? To what audience is the article or program aimed?**

As I stated concerning my request for expedited processing, I am a researcher for LaRouche Political Action Committee and *Executive Intelligence Review* magazine, both of which are published on the internet and carry extensive news and commentary on policy matters, including foreign policy. As such, I rarely write finished-product for either website, but rather provide my analysis and opinion to others who do, including but certainly not limited to Mr. LaRouche. I attach for your reference, a list of selected *EIR* articles which I either authored, or was listed as a contributor. As I also stated in my request for expedited processing, my request is aimed at informing the ongoing national public debate on what is widely perceived as a crisis in U.S. Mideast policy. As such, it is not sought for any particular article or program, but to seek to inform U.S. citizens (notably including members of the government in both the Executive and Legislative branches) more generally, as the debate goes on.

**e. Identify the particular person who will actually use the requested information in scholarly or other analytic work and then disseminate it.**

The information will be used, in the first instance, by writers and broadcasters associated with LaRouche Political Action Committee and/or *Executive Intelligence Review* magazine, to the extent they find the information useful in understanding and explaining the aspect of U.S. Mideast policy addressed by PSD-11. I anticipate the information will be so-useful (which is why I seek it), but I cannot anticipate whether it will in fact be so.

-3-

**f. Describe any commercial interest that would be furthered by the disclosure of the requested information, e.g., Will you be paid for the publication or dissemination of the requested information? If so, how much will you be paid and in what manner will you receive payment? Will you receive any other type of commercial benefit due to your dissemination of the requested information? A "commercial interest" is one that furthers a commercial, trade, or profit interest as those terms are commonly understood.**

I am unaware of any commercial interest that will be served by disclosure. The cited websites do not charge any fees to read their articles. I will not be paid for the information, nor will I receive any other "commercial benefit."

# Editorial

## *Vindication*

Americans know the role that Lyndon LaRouche and this magazine played in fighting to block, and then to reverse, the corrupt 2001 deal which shut down the only public, acute-care hospital in the nation's capital—District of Columbia General Hospital—and which privatized the District's public health-care system.

Spokesmen for *EIR* and the LaRouche movement spotlighted the shady background of Doctors Community Healthcare Corp. (DCHC), the owner of Greater Southeast Community Hospital, which was given the contract to administer the new privatized health system, and which was supposed to "replace" D.C. General. We reported that DCHC and its financial partner, National Century Financial Enterprises (NCFE), had been investigated and sued for fraud and racketeering in a number of jurisdictions, and that they had been accused of looting hospitals and healthcare facilities, after capturing the income stream of these institutions through NCFE's financing schemes. (District Councilman David Catania also exposed the dubious financial dealings of DCHC and NCFE, and tried unsuccessfully to obtain full financial disclosure regarding these two entities.)

This was not simply a local fight. LaRouche identified the battle to save D.C. General as being of "national and even international significance," as the leading edge of the fight to restore the principle of the General Welfare in U.S. economic policy. LaRouche also insisted that the public-health system of Washington, as the nation's capital, should be a model for the nation and the world, and that it should play a cutting-edge role in research on disease and emergency preparedness.

With the complicity of Congress, and the Democratic Party leadership, the corrupt privatization deal was allowed to stand, and the healthcare system of the nation's capital slid into chaos and catastrophe. NCFE filed for bankruptcy on Nov. 18, 2002, two days after the FBI raided its Ohio offices amidst charges of fraud, and DCHC and Greater Southeast went into bankruptcy court in Washington, D.C. two days after that.

Now, in a measure of vindication for those who fought those battles, U.S. District Judge Gladys Kessler has ordered the release of substantial portions of the secret 2001 PriceWaterhouse report on the financial viability of DCHC and Greater Southeast Community Hospital.

Judge Kessler's order, dated March 5, 2003, was issued in an FOIA lawsuit, *Canning v. District of Columbia,* brought by an associate of LaRouche, George Canning. The lawsuit asked for documents related to the PriceWaterhouse Cooper "due diligence" report on the financial viability of DCHC and Greater Southeast, and on their ability to provide healthcare for the District of Columbia's indigent population.

Most notable are the introductory remarks of Judge Kessler: "As an initial matter, the Court cannot help noting that the financial position of Greater Southeast Community Hospital, and its relatively new owner, Doctors Community Healthcare Corp., are of extraordinary significance to the plight of poor people seeking medical care in the District of Columbia. Both these medical providers are now in bankruptcy, and in active litigation before the Bankruptcy Court. Resolution of the issues in the Bankruptcy Court will very probably affect the City's entire healthcare system. It may well be that if the documents being sought in this case had been released by the District of Columbia Government when they were first prepared in March and April, 2001, at a time when the Legislative and Executive Branches of the District of Columbia Government were weighing the wisdom of granting Greater Southeast the leading role in running the City's new privatized indigent care system, the citizens of the District of Columbia would not be in the dire straits they now find themselves in."

Yes, it could have been prevented. Although the D.C. government fought to keep the documents secret, in order to cover up its own witting complicity in the corrupt 2001 deal, the U.S. Congress, in its oversight capacity, could have demanded the documents at any time, and could have acted to prevent the healthcare crisis which is now afflicting our national capital.

**Selected *Executive Intelligence Review* Articles**
**Authored Or Contributed-To By George Canning**

## Articles on U.S. politics and policy:

11/3/06 EIR: "GOP Megabucks Flood Lieberman Campaign," by Michele Steinberg and George Canning
http://www.larouchepub.com/eiw/public/2006/2006_40-49/2006_40-49/2006-44/pdf/41_644_inv est.pdf

1/13/06 EIR: "Libby's Drafts of Powell's UN Speech Could Be 'Smoking Gun'," by Michele Steinberg (George Canning listed as a contributor)
http://www.larouchepub.com/eiw/public/2006/2006_1-9/2006_1-9/2006-2/pdf/13-15_602_nat.p df

1/13/06 EIR: "The Federalist Society March Though the Institutions" (George Canning listed as a co-author)
http://www.larouchepub.com/eiw/public/2006/2006_1-9/2006_1-9/2006-2/pdf/09-12_602_nat.p df

12/9/05 EIR: "Yes, Dick, You Are a Liar," by Jeffrey Steinberg (George Canning listed as a contributor)
http://www.larouchepub.com/eiw/public/2005/2005_40-49/2005_40-49/2005-49/pdf/04-11_47_f eat.pdf

9/9/05 EIR: "A Look at the Corps of Engineers in the 1930s," by George Canning
http://www.larouchepub.com/eiw/public/2005/2005_30-39/2005_30-39/2005-36/pdf/24_35_feat. pdf

1/22-1/28/80 EIR: "The bones in Bush's closet," by George Canning
http://www.larouchepub.com/eiw/public/1980/eirv07n03-19800122/eirv07n03-19800122_055-th e_bones_in_bushs_closet.pdf

**Book reviews concerning U.S. domestic politics:**

9/4/92 EIR: "Morris Dees: the paradox of a Klan-watcher," by George Canning
http://www.larouchepub.com/eiw/public/1992/eirv19n35-19920904/eirv19n35-19920904_059-morris_dees_the_paradox_of_a_kla.pdf

10/26/82 EIR: "Hulan Jack describes the fight for economic progress in New York," by George Canning
http://www.larouchepub.com/eiw/public/1982/eirv09n41-19821026/eirv09n41-19821026_012-book_review.pdf



United States Department of State

*Washington, D.C. 20520*

JAN 1 1 2013

Dear Requester,

RE: __*PSD -11 & the Muslim Brotherhood*__

This is in response to your request dated *Dec. 29 2012*. We have assigned Case Control Number *F - 2013 - 60832* and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request.

Our published regulations regarding expedition, 22 C.F.R. § 171.12(b), require a specific showing of a compelling need. **Expedited processing is granted only in the following situations:** *(1) imminent threat to the life or physical safety of an individual; (2) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly; (3) substantial humanitarian reasons; and (4) loss of substantial due process rights.* Your request does not meet any of the established criteria. Regrettably, I must advise that you have not provided adequate justification for expedition. However, you may be assured that we will make every effort to process your request in as timely a manner as possible. For your convenience, I have enclosed a copy of the Department's expedited processing criteria.

If you wish to appeal the denial of expedition, you may write to the Chief, Requester Liaison Division, at the address below, within 30 days of receipt of this letter.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you want to contact us, you may call our FOIA Requester Service Center on (202) 261-8484 or send an email to FOIAStatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Mary Therese Casto

Chief, Requester Communications Branch

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

— **Canning and Steinberg v. Dept. of State** —
**Complaint Exh. B**

## <u>Expeditious Processing Information Sheet</u>

Expedited processing shall be granted to a requester after the requester requests such and demonstrates a compelling need for the information.  A compelling need in deemed to exist where the requester can demonstrate one of the following:

1.  **A Compelling Need** means that the failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.

2.  **A Compelling Need** means that the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity.  An individual primarily engaged in disseminating information to the public.  Representatives of the news media would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the pubic, not just to a particular segment or group.

    (a)  **Urgently Needed** means that the information has a particular value that will be lost if not disseminated quickly.  Ordinarily this means a breaking news story of historical interest only, or information sought for litigation or commercial activities would not qualify nor would a news media publication or broadcast deadline unrelated to the news breaking nature of the information.

    (b)  **Actual or Alleged Federal Government Activity.**  The information concerns some actions taken, contemplated, or alleged by or about the Government of the United States, or one of its components or agencies, including the Congress.

3.  **Substantial Due Process** rights of the requester would be impaired by the failure to process immediately; or

4.  **Substantial Humanitarian** concerns would be harmed by the failure to process immediately.

A demonstration of compelling need by a requester shall be made by a statement certified by the requester to be true and correct to the best of their knowledge.

## Fee Waiver

Your request for a fee waiver has been granted; therefore, your request will be
processed at no charge to you.

60 Sycolin Rd.
Leesburg, VA 20175
January 22, 2013

Chief, Requester Liaison Division
Office of Programs and Services
U.S. Department of State, SA-2
Washington, D.C. 20522-8100

RE:  FOIA Appeal
     Case Control No. F-2013-00832

To whom it may concern:

     This is an appeal of the denial of expedited treatment, requested by me under the
Freedom of Information Act and agency regulations.  That element of my letter of request dated
December 29, 2012, was denied by Mary Therese Casto, Chief of the Requester Communications
Branch, by letter dated January 11, 2013.  A copy of the denial letter is attached.

     In her letter, Ms. Casto cited the relevant C.F.R. section, quoted the prescribed situations
under which expedited processing is granted, and concluded, "Your request does not meet any of
the established criteria.  Regrettably, I must advise that you have not provided adequate
justification for expedition."

     On January 17, I phoned the FOIA Requester Service Center at the phone number shown
on the letter, to try to determine why my showing was deemed inadequate, that I might try to cure
the problem without the delay of an appeal.  I was told that I could not speak to anybody about it,
and the only course open to me was to file this appeal.

     As you can see, my request letter devoted a section to Expedited Treatment, referencing
the same material quoted by Ms. Casto, from the "U.S. Department of State Information Access
Guide" from your website.  (For some reason, the four circumstances are presented there in a
different order, than they are in the "Expeditious Processing Information Sheet" which Ms. Casto
attached to her letter.)  At any rate, I said that the provision under which I seek expeditious
treatment is the fourth one listed in the Access Guide, which is the second one listed on the
Expeditious Processing Information Sheet:

     The information is urgently needed by an individual primarily engaged in
     publicizing information in order to inform the public concerning actual or alleged
     government activity.  News media requesters would normally qualify; however,
     other persons must demonstrate that their primary activity involves publishing or
     otherwise disseminating information to the public, not just a particular segment or
     group.

-2-

The description further notes that "(a) Urgently needed means that the information has a particular value that will be lost if not distributed quickly. Ordinarily this means a breaking news story of general public interest."

My letter proceeded to address those criteria.

Since I don't know why Ms. Casto deemed my showing to be insufficient, I can't adequately debate her decision.  I also requested a fee waiver, and addressed the more-intricate fee waiver requirements in an Appendix to my request letter, to which I here refer you.  That Appendix addresses in more detailed fashion, some of the issues which are also involved for expedited treatment; note particularly item "d.," on my ability to disseminate the information, in which I explicitly expand upon what I had said in my request for expedited processing.

If my ability to disseminate the information is what is at issue, please consider the relevant information which is provided in my fee waiver Appendix to my request letter, and please note that this showing was deemed adequate by Ms. Casto, for a fee waiver.  If that is the issue, and you still deem my showing inadequate, please in the alternative deem Jeffrey Steinberg, an editor and weekly writer for *Executive Intelligence Review*, to be a co-requester for my FOIA request, and proceed to grant expedited processing based upon his also requesting the information.  I enclose herewith a letter from Mr. Steinberg, requesting he be made a co-requester in my FOIA request, and requesting expedited treatment of the request.

If there is some other issue involved in Ms. Casto's denial of expedited treatment, I respectfully request that you inform me of the issue, and allow me to supplement this appeal by addressing that issue.

In conclusion, please reverse Ms. Casto's denial, and grant expedited treatment to my (or Mr. Steinberg's and my) FOIA request.

Pursuant to the Act's requirements on administrative appeals, I request a response to this appeal (or any supplemented appeal I may file regarding issues about which you've informed me) within twenty working days.

Sincerely,

George Canning



United States Department of State

*Washington, D.C. 20520*

JAN 1 1 2013

Dear Requester,

RE: *PSD -11 & the Muslim Brotherhood*

This is in response to your request dated *Dec. 29, 2012*. We have assigned Case Control Number *F-2013-06832* and will begin the processing of your request based upon the information provided in your communication.

The cut-off date is the date the search is initiated unless you have provided a specific timeframe.

Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request.

Our published regulations regarding expedition, 22 C.F.R. § 171.12(b), require a specific showing of a compelling need. **Expedited processing is granted only in the following situations:** *(1) imminent threat to the life or physical safety of an individual; (2) urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity and the information is urgently needed in that a particular value of the information would be lost if not disseminated quickly; (3) substantial humanitarian reasons; and (4) loss of substantial due process rights.* Your request does not meet any of the established criteria. Regrettably, I must advise that you have not provided adequate justification for expedition. However, you may be assured that we will make every effort to process your request in as timely a manner as possible. For your convenience, I have enclosed a copy of the Department's expedited processing criteria.

If you wish to appeal the denial of expedition, you may write to the Chief, Requester Liaison Division, at the address below, within 30 days of receipt of this letter.

We will notify you as soon as responsive material has been retrieved and reviewed.

Should you want to contact us, you may call our FOIA Requester Service Center on (202) 261-8484 or send an email to FOIAstatus@state.gov. Please refer to the Case Control Number in any communication.

Sincerely,

Mary Therese Casto
Chief, Requester Communications Branch

---

*Office of Information Programs and Services*
U.S. *Department of State, SA-2*
*Washington. DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

## Expeditious Processing Information Sheet

Expedited processing shall be granted to a requester after the requester requests such and demonstrates a compelling need for the information.  A compelling need in deemed to exist where the requester can demonstrate one of the following:

1. **A Compelling Need** means that the failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.

2. **A Compelling Need** means that the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity.  An individual primarily engaged in disseminating information to the public.  Representatives of the news media would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the pubic, not just to a particular segment or group.

    (a)  **Urgently Needed** means that the information has a particular value that will be lost if not disseminated quickly.  Ordinarily this means a breaking news story of historical interest only, or information sought for litigation or commercial activities would not qualify nor would a news media publication or broadcast deadline unrelated to the news breaking nature of the information.

    (b)  **Actual or Alleged Federal Government Activity.**  The information concerns some actions taken, contemplated, or alleged by or about the Government of the United States, or one of its components or agencies, including the Congress.

3. **Substantial Due Process** rights of the requester would be impaired by the failure to process immediately; or

4. **Substantial Humanitarian** concerns would be harmed by the failure to process immediately.

A demonstration of compelling need by a requester shall be made by a statement certified by the requester to be true and correct to the best of their knowledge.

## Fee Waiver

Your request for a fee waiver has been granted; therefore, your request will be processed at no charge to you.



# Executive Intelligence Review

January 22, 2013

Chief, Requester Liaison Division
Office of Programs and Services
U.S. Department of State, SA-2
Washington, D.C. 20522-8100

RE:  FOIA Appeal of George Canning
    Case Control No. F-2013-00832

To whom it may concern:

 I hereby request that I be joined to the above-referenced FOIA request by my associate, George Canning, as a co-requester.

 Further, I join in his request (the subject of the appeal) for expedited treatment of the request.  I anxiously await what information may be gleaned through this FOIA request concerning Presidential Study Directive 11, and about the information Mr. Canning seeks about U.S. Government relations with the Muslim Brotherhood.

 If, as Mr. Canning surmises in appeal letter this date, Ms. Casto has denied expedited processing because of a perception that Mr. Canning is not sufficiently "primarily engaged in publicizing information in order to inform the public concerning actual or alleged government activity," please be advised that I am such a person.  I note that the above quote is followed in the prescriptions for expedited processing by the comment, "News media requesters would normally qualify . . ."

 I am an Editor of *Executive Intelligence Review*, a weekly news magazine published on the internet, and usually I author at least one article a week in *EIR*.  I attach for your reference, a copy of the masthead of a recent number of *EIR*, and a copy of an article by me in the January 4, 2013 edition.  Please see, for a wide list of my articles, www.larouchepub.com; search on my name, in the field provided in the upper-left corner of the homepage.

-2-

If you need to contact me, please do so at the Leesburg, Virginia address shown on Mr. Canning's FOIA request and appeal letters.

Sincerely,

Jeffrey Steinberg

Founder and Contributing Editor:
  *Lyndon H. LaRouche, Jr.*
Editorial Board: *Lyndon H. LaRouche, Jr.,
  Antony Papert, Gerald Rose, Dennis Small,
  Nancy Spannaus, Jeffrey Steinberg, William
  Wertz*
Editor: *Nancy Spannaus*
Managing Editors: *Bonnie James, Susan Welsh*
Technology Editor: *Marsha Freeman*
Book Editor: *Katherine Notley*
Graphics Editor: *Alan Yue*
Photo Editor: *Stuart Lewis*
Circulation Manager: *Stanley Ezrol*

INTELLIGENCE DIRECTORS
Counterintelligence: *Jeffrey Steinberg, Michele
  Steinberg*
Economics: *John Hoefle, Marcia Merry Baker,
  Paul Gallagher*
History: *Anton Chaitkin*
Ibero-America: *Dennis Small*
Law: *Edward Spannaus*
Russia and Eastern Europe: *Rachel Douglas*
United States: *Debra Freeman*

INTERNATIONAL BUREAUS
Bogotá: *Javier Almario*
Berlin: *Rainer Apel*
Copenhagen: *Tom Gillesberg*
Houston: *Harley Schlanger*
Lima: *Sara Madueño*
Melbourne: *Robert Barwick*
Mexico City: *Gerardo Castilleja Chávez*
New Delhi: *Ramtanu Maitra*
Paris: *Christine Bierre*
Stockholm: *Ulf Sandmark*
United Nations, N.Y.C.: *Leni Rubinstein*
Washington, D.C.: *William Jones*
Wiesbaden: *Göran Haglund*

ON THE WEB
e-mail: eirns@larouchepub.com
www.larouchepub.com
www.executiveintelligencereview.com
www.larouchepub.com/eiw
Webmaster: *John Sigerson*
Assistant Webmaster: *George Hollis*
Editor, Arabic-language edition: *Hussein Askary*

EIR (ISSN 0273-6314) *is published weekly
(50 issues), by EIR News Service, Inc.,*
*P.O. Box 17390, Washington, D.C. 20041-0390.
(703) 777-9451*

*European Headquarters:* E.I.R. GmbH, Postfach
Bahnstrasse 9a, D-65205, Wiesbaden, Germany
Tel: 49-611-73650
Homepage: http://www.eirna.com
e-mail: eirna@eirna.com
Director: Georg Neudecker

*Montreal, Canada:* 514-461-1557

*Denmark:* EIR - Danmark, Sankt Knuds Vej 11,
basement left, DK-1903 Frederiksberg, Denmark.
Tel : +45 35 43 60 40, Fax: +45 35 43 87 57. e-mail·
eirdk@hotmail.com.

*Mexico City:* EIR, Ave Morelos #60-A, Col Barrio
de San Andres, Del. Azcapotzalco, CP 02240,
Mexico, DF. Tel: 5318-2301, 1163-9734, 1163-9735.

Copyright: ©2013 EIR News Service. All rights
reserved. Reproduction in whole or in part without
permission strictly prohibited.

Canada Post Publication Sales Agreement
#40683579

*Postmaster:* Send all address changes to *EIR*, P.O.
Box 17390, Washington, D.C. 20041-0390.



# From the Managing Editor

**A**s we approach the Second Inaugural of Barack Obama, cynically scheduled to coincide with Martin Luther King Day—a great man with whom Obama bears no similarity in character, despite the color of his skin—I am reminded of an earlier Second Inaugural, nearly 150 years ago, of our greatest President, Abraham Lincoln. On that occasion, in 1865, Lincoln, reflecting on the horrors of the Civil War, then nearing its bloody end, observed: "The Almighty has his own purposes. 'Woe unto the world because of offenses! for it must needs be that offenses come; but woe to that man by whom the offense cometh.'" Obama and Company would do well to heed Lincoln's warning.

The LaRouche movement has put the clear alternative to the British imperial/Obama program on the table, as laid out in this week's *Feature*, "2013: The Year of Glass-Steagall." Faced with the worst economic breakdown crisis since the 14th Century, there is now an international upsurge in favor of Glass-Steagall; see "Documentation: Worldwide Glass-Steagall Legislative Initiatives."

*International* reviews the strategic war threat in "Russia, China Respond to BMD; Syria Conflict Deadlocked," followed by an interview with Mother Agnès-Mariam of Syria, "Syrian War Is Being Steered from Abroad," and a report on the crisis in Mali, "Will France's Bombing of Mali Lead to a New Thirty Years War?" Former Israeli Shin Bet chief Yuval Diskin takes on Netanyahu and Barak, noting pointedly that, "There Are Worse Things Than an Iranian Bomb"; a review of former Sen. Bob Graham's *Keys to the Kingdom*, reopens the 9/11/01 investigation, asking, "Why has the present and prior Administration engaged in such a comprehensive, sustained, and, to date, largely successful cover-up?"

In *National*, "Congress Faces Countdowns on Economy, Expanded War" reports on LaRouchePAC organizing in Congress for LaRouche's threefold recovery program. Obama's killer-drone program is put under the spotlight in "Drone Strikes as Strategic Folly: Obama Is al-Qaeda's No. 1 Recruiter."

Two special items complete the issue: in *Science*, Asteroid Apophis Update: No Impact; a Call for Action," on how to defend Earth from asteroids; and in *Physical Economy*, "To Go Ahead, Look Back to When New Jersey 'Worked,'" on the infrastructure needed, and immediately available, to protect from superstorms like Sandy.

*Bonnie James*

# EIRInternational

# UN, Arab League, Russia Warn: Syria Now on the Edge of Hell

by Jeffrey Steinberg

Dec. 31—Syria is on the very edge of Hell, and in danger of collapsing into the condition of a failed state. These are the warnings issued by UN-Arab League Special Envoy Lakhdar Brahimi and Russian Foreign Minister Sergei Lavrov, following an intense week of diplomacy in Damascus, Moscow, and Cairo, aimed reviving the Geneva agreements of June 2012, for achieving a political solution to the two-year crisis.

Brahimi spent the last week of December in Damascus, meeting with President Bashar al-Assad, other government officials, and leaders of the internal opposition. On Dec. 29, Brahimi flew to Moscow for meetings with Lavrov and Russian Special Envoy to Syria Mikhail Bogdanov.

At the end of the Moscow meetings, Brahimi and Lavrov announced plans for a trilateral meeting, in early January, among Brahimi, Bogdanov, and U.S. State Department official William Burns—the second such meeting since early December. From Moscow, Brahimi went on to Cairo, where he met with top Arab League officials and with Egyptian President Mohamed Morsi.

At the conclusion of the week of diplomacy, Brahimi and Lavrov announced a new ceasefire plan, one that likely represents the last-best hope to avert a total disintegration of Syria, leading to a larger regional conflict and, perhaps, a general war.

The question is whether the combined diplomatic weight of Washington, Moscow, and the UN can prevail on the Saudi and Qatari-armed and -financed opposition to sit down with representatives of the Assad government to work out a power-sharing and transitional agreement, starting with a ceasefire.

## Military Stalemate

The reality on the ground in Syria is that neither side can, under present circumstances, achieve a military victory. Over the past 48 hours, the Syrian Army defeated the rebels in a major battle near Homs. The forces loyal to President Assad cannot absolutely defeat the rebels and control the entire national territory. The rebels cannot take over the capital city of Damascus.

Under these conditions of stalemate, the opposition forces are more and more dominated by radical Sunni factions, heavily financed and armed from the Persian Gulf states. The al-Nusra Front, an offshoot of al-Qaeda in Iraq (AQI), is by far the best organized and financed of all of the armed rebel factions. The group has been placed on the U.S. State Department List of Foreign Terrorist Organizations, yet all of the other armed rebel factions have defended al-Nusra because it is the most effective fighting force. It is becoming clear, as has been openly stated by Brahimi and others, that Syria, under al-Nusra domination, could become a new hotbed of global terrorism, as did Afghanistan in the aftermath of the 1980s Western-sponsored mujahideen war to drive out the Soviet Army.

According to a report by the German intelligence agency, BND, made public last week, Syria is already

emerging as a hub of international terrorism. European jihadists have been recruited to go to Syria, not so much to fight the Assad regime, as to be part of a new terrorism center, targeting Western European nations.

Jordanian intelligence has issued a dire warning as well, that the warfare inside Syria, which has already spilled over into Lebanon, will soon engulf both Jordan and Israel, creating the conditions for a much larger conflict. One senior U.S. Pentagon advisor warned at a recent conference in Washington, that the world is now in "July 1914," just months before the outbreak of World War I. At that time, as could happen now, a series of nominally regional conflicts, involving leading world powers, erupted into general war. The same point was made by Lyndon LaRouche in his weekly international webcast on Dec. 28.

## Hell on Earth

Another clear indication that Syria is in the process of degenerating into a failed state, just as Lavrov and Brahimi warned, is a report published Dec. 27 in the London *Guardian*, which reported on a series of recent assassinations of rebel leaders, carried out by other rebel groups, fighting over the spoils of war. In the Aleppo area in the north of Syria, which is also the industrial heartland of the country, rival rebel factions have shifted their attention from fighting the Syrian Army to looting the population of precious resources, from food to weapons to industrial products and raw materials. The degeneration into widespread looting is but one factor in Brahimi's warnings that Syria is on the verge of becoming a "new Somalia" in the eastern Mediterranean.

Another clear indication of a descent into barbarism came from eyewitness accounts by a leading Catholic figure inside Syria. Sister Agnes-Mariam, mother superior of the Monastery of St. James the Mutilated, has been on an international tour for the last several months, seeking to arouse the conscience of, especially Europeans, over their support for the bestial jihadi movement in Syria. Well-known for her reports of rebel atrocities against Christians, including exposing that it was the rebels, not the Assad government, which carried out the Houla massacre, Sister Agnes-Mariam left Syria under fear of abduction, but is planning to return soon, to lead a new reconciliation movement.

On Dec. 30, the London *Sunday Times* printed the latest shocking revelation from Sister Agnes-Mariam: the story of the beheading and dismemberment of a young Christian man, allegedly because his brother had charged the rebels with being bandits.

Andrei Arbashe, according to the *Times* account, was a young man who had recently been married, and was about to become a father. "They beheaded him, cut him into pieces, and fed him to the dogs," said Agnes-Mariam. "The uprising has been hijacked by Islamist mercenaries who are more interested in fighting a holy war than in changing the government. It's turned into a sectarian conflict, one in which Christians are paying a high price."

The highly educated Carmelite nun, who is of Palestinian and Lebanese descent, says that 300,000 of Syria's 2 million Christians have been displaced by the conflict, including threats by the Islamic extremists. "It's a scandal that the free and democratic world is supporting extremists," she said in reference to Western backing for the anti-Assad coalition.

## A Moment of Decision

As NATO builds up Patriot missile batteries, AWACS surveillance planes, and ground forces in the region over the coming weeks, the danger that Syria will become a trigger for a global confrontation, drawing in the United States, Russia, and China, will grow. Russian military advisors are reported to be in Syria, manning a new generation of anti-aircraft batteries, opening the possibility of a direct confrontation between Russia and NATO. Even if that larger conflict is avoided, Syria will remain a flashpoint for a much larger regional war, a sectarian conflict, like the Balkan wars of the 1990s.

Ahmad al-Khatib, the head of the Saudi-Qatari-EU-U.S.-backed opposition, has been invited by Russian Foreign Minister Lavrov to meet in a "neutral capital," such as Cairo or Geneva, to review the new Russia-UN ceasefire plan. Al-Khatib, a Muslim Brotherhood-linked cleric, has said that the departure of Assad is a precondition for any talks; but Brahimi told reporters and Russian officials that Assad has indicated he is not willing to leave office until his Presidential term expires in 2014.

Unless this stalemate is broken, by intense Russian-American pressure, Syria will, indeed, descend into Hell on Earth in the immediate days and weeks ahead. Under those circumstances, the prospect of more direct NATO intervention greatly increases, along with the danger of Syria being the trigger for world war, even thermonuclear world war.



**United States Department of State**

*Washington, D.C. 20520*

APR 2 5 2013

Case Number: F-2013-00832

George Canning
60 Sycolin Rd.
Leesburg, VA  20175

Dear Mr. Canning:

This is in response to your Freedom of Information Act (FOIA) request,
dated December 29, 2012, concerning PSD – 11 and The Muslim
Brotherhood. Specifically this letter addresses your appeal of our denial of
expeditious processing which was dated January 22, 2013.

We have considered your appeal of the denial of expeditious processing.
Our published regulations regarding expedition, 22 C.F.R. 171.12(b), require
a specific showing of a compelling need. **Expeditious processing is
granted only in the following situations:**

  (1) Imminent threat to the life or physical safety of an individual;
  (2) Urgently needed by an individual primarily engaged in
  disseminating information in order to inform the public concerning
  actual or alleged Federal Government activity and the information is
  **urgently needed in that a particular value of the information
  would be lost if not disseminated quickly;**
  (3) Substantial humanitarian reasons; and
  (4) Loss of substantial due process rights.

Your request and appeal do not meet any of the established criteria.

Regrettably, I must advise that you have not provided adequate justification
for expedition and I must uphold the decision to deny expeditious

---

*Office of Information Programs and Services*          *Inquiries:*
*U.S. Department of State, SA-2*                       *Phone: 1-202-261-8484*
*Washington, DC 20522-8100*                            *FAX: 1-202-261-8579*
*Website: www.foia.state.gov*                          *E-mail: FOIAStatus@state.gov*

—  **Canning and Steinberg v. Dept. of State**  —
**Complaint Exh. D**

- 2 -

processing. Please be assured that the Department takes its FOIA responsibilities very seriously and we are processing this request in as timely a manner as possible. All appropriate offices have been advised of your interest in this matter.

For further communications, please note our contact information at the bottom of this page. You may also refer to our website for general information and guidelines. We can provide faster service if you include your request case number **F-2013-00832** in your communications with us.

Sincerely,

Rosemary D. Reid, Chief
Requester Liaison Division

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*