## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| GEORGE CANNING and JEFFREY ) | |
| STEINBERG, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No. 13-831 (RDM)** |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| STATE, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs George Canning and Jeffrey Steinberg ("Plaintiffs"), acting *pro se*, brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq.*  Plaintiffs seek an order requiring Defendant United States Department of State ("the Department") to produce two groups of records: (1) a 2010 memorandum from the President to his foreign policy advisors, entitled "Presidential Study Directive 11" ("PSD-11"), and certain related documents; and (2) documents pertaining to the Muslim Brotherhood.  *See* Dkt. 1 at 7.

The parties have cross-moved for partial summary judgment with respect to the first portion of Plaintiffs' FOIA request.  Dkts. 19, 23, 35.  Plaintiffs also seek *in camera* review of approximately ninety original documents that were withheld in full by the Department.  Dkts. 22, 36.  For the reasons given below, the parties' motions for partial summary judgment are **GRANTED** in part and **DENIED** in part.  The Department is directed to supplement its declarations with the additional information described in this Memorandum Opinion and to

disclose the portion markings on two documents that were released in part. Plaintiffs' motions for *in camera* review are **DENIED**.

## I. BACKGROUND

The factual and procedural background of this case is not disputed. In December 2012, Plaintiff Canning filed a FOIA request for "certain information created and/or compiled by the Department of State, concerning Presidential Study Directive 11 ('PSD-11')." Dkt. 1 at 7 (Ex. A). The request sought a copy of PSD-11 itself, "[d]ocuments and other information created or compiled by the State Department which were utilized internally . . . , in the creation of PSD-11," and "[d]ocuments and other information created or compiled by the State Department which were generated pursuant to the mandates of PSD-11." *Id*. In addition, the request sought "[a]ll reports created or compiled by the State Department from 2005 to present, concerning contacts or interviews with, or otherwise about, individuals identified as leaders of the Muslim Brotherhood, or otherwise analyzing the Muslim Brotherhood's role in Muslim nations." *Id.* Plaintiff requested a fee waiver and expedited production of responsive records. *Id.* at 7-9.

In January 2013, the Department acknowledged receipt of the FOIA request. *See* Dkt. 1 at 18 (Ex. B). The Department granted the fee waiver request but denied expedited processing. *Id.* at 18, 20. Plaintiff Canning filed an administrative appeal of the denial of his motion to expedite. *Id.* at 21-22 (Ex. C). He also asked that Plaintiff Steinberg be deemed a co-requester and permitted to join in the appeal. *See id*. at 22, 26. The Department upheld the denial of expedited processing. *Id.* at 31-32 (Ex. D). Although the record is not entirely clear on this point, the Department also apparently agreed to treat Plaintiff Steinberg as a co-requester.

In June 2013, Plaintiffs filed this action. *See* Dkt. 1. They seek an order compelling the Department to search for and to produce all responsive records on an expedited basis. *Id.* at 5-6. The parties conferred and agreed that the Department would prioritize the production of records

responsive to the first portion of Plaintiffs' FOIA request, that is, the request for PSD-11 and

certain related documents.  *See* Dkt. 30 ¶ 2 (Dec. 22, 2014, Joint Status Report).  At the parties'

request, the Court granted the parties leave to file cross-motions for partial summary judgment

with respect to the Department's satisfaction of the first portion of the FOIA request.  *See* June

12, 2014, Minute Order; *see also* Dkt. 16.  Although Plaintiffs agreed to narrow the scope of the

second portion of the FOIA request, *see* Dkt. 30 ¶ 2 & n.1, the processing and production of

responsive documents is still ongoing, *see* Dkt. 42 ¶ 1 (Aug. 24, 2015, Joint Status Report).

Accordingly, issues relating to the second portion of Plaintiff's FOIA request are not presently

before the Court.

   In August 2014, the Department moved for partial summary judgment.  *See* Dkt. 19.[1]  It

attached a declaration by John F. Hackett, Acting Director of the Office of Information Programs

and Services of the United States Department of State, *see* Dkt. 19-2 ¶ 1 ("First Hackett Decl."),

which explained that of the 144 fully processed responsive documents, 10 had been released in

full, 77 had been withheld in full, and 57 had been released in part, *see id.* ¶ 105; *see also id.*

¶¶ 8, 9-13.  The Hackett declaration further explained that due to a "miscommunication" some

documents were "mistakenly never processed" and that 20 such documents had been "referred to

other agencies with equities in the information."  *Id.* ¶¶ 13, 31; Dkt. 19 at 12 n.3.  These agencies

were later identified as the Central Intelligence Agency ("CIA") and the United States Agency

for International Development ("USAID").  *See* Second Declaration of John F. Hackett, Dkt. 25-

1 ¶¶ 15, 16, 24; Third Declaration of John F. Hackett, Dkt. 27-1 ¶ 5.

---

[1]  The Court advised Plaintiffs that if they did not timely respond to the arguments in the
Department's motion for partial summary judgment, those arguments might be deemed
conceded.  *See* Dkt. 20; *see also Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988); *Neal v. Kelly*,
963 F.2d 453 (D.C. Cir. 1992).

In October 2014, Plaintiffs cross-moved for partial summary judgment, arguing that the Department improperly withheld PSD-11 and other responsive documents in whole or part and that the Department had failed to release or account for other responsive documents.  *See* Dkt. 23 at 1-2.  In addition, Plaintiffs moved for *in camera* review of the classification markings on approximately 90 original documents, including PSD-11, withheld under Exemption 1.  *See* Dkt. 22 at 1-2.

On November 14, 2014, the Department submitted a second declaration accounting for 17 of the 20 outstanding responsive documents.  *See* Dkt. 25-1.  It explained that these documents were "prepared by the CIA," had been referred to that agency for review, and were withheld in full under FOIA Exemption 1 as "relat[ing] directly to intelligence activities, sources, or methods."  *See id.* ¶ 24.  The declaration also addressed several issues raised in Plaintiffs' motion for summary judgment.  *See id.* ¶ 5-14.  A few days later, the Department submitted a third declaration describing the last three outstanding responsive documents, which had been referred to USAID.  *See* Dkt. 27-1 ¶ 5.  Two of the USAID documents were released in full.  *Id.*  The Department redacted the third document, withholding "the names and identifying details" of "certain local organizations that have received U.S. support."  Dkt. 27-1 ¶ 6.  At that point, the Department stated that it had "produced or *Vaughned* all information" responsive to the first portion of Plaintiffs' FOIA request.  *See* Dkt. 27 at 3.

In December 2014, Plaintiffs filed a second motion for partial summary judgment addressing the 20 documents referred to the CIA and USAID.  *See* Dkt. 35.  Plaintiffs also filed a second motion for *in camera* review, again seeking review of the classification markings on the documents withheld in full under Exemption 1, and in addition, seeking *in camera* review of the contents of PSD-11.  *See* Dkt. 36 at 1-2.

After the pending motions were fully briefed, the parties jointly notified the Court that the Department had obtained the emails of former Secretary of State Hillary Clinton and certain other former State Department employees (collectively, "the Clinton emails").[2]  The parties have agreed that the Department will search the Clinton emails for documents responsive to both portions of Plaintiff's request.  *See* Dkt. 42.  The parties have also agreed that the additional search of the Clinton emails does not pose any barrier to resolution of the pending motions.  *See* Dkt. 40.  The parties confirmed this position at the September 21, 2015, status conference. Accordingly, the Court resolves the pending motions on the understanding that issues relating to the search of the Clinton emails and any additional responsive documents identified in that search can be addressed at a later date.

## II.  LEGAL STANDARD

The Freedom of Information Act is premised on the notion that "an informed citizenry" is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (citation omitted).  The Act requires federal agencies to produce agency records upon public request unless the information requested falls within one of nine enumerated exemptions. 5 U.S.C. §§ 552(a)(3) & (b).  Of relevance here are Exemption 1, which covers "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order," *id.* § 552(b)(1); Exemption 5, which covers "inter-agency or intra-

---

[2]  The Clinton emails are subject to production in connection with other actions in this jurisdiction; those actions are the subject of a pending motion to coordinate filed by the United States.  *See* Dkts. 43, 44.  The Department has also moved to stay proceedings relating to the Clinton emails while the motion to coordinate is pending.  *See* Dkt. 45.  Here, however, the parties agree that there is no reason to delay resolution of the motions addressed in this opinion, with the understanding that any issues posed by the Clinton emails may be raised and addressed at a later time.

agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," *id.* § 552(b)(5); and Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," *id.* § 552(b)(6).  The Court reviews the agency's application of FOIA exemptions *de novo*, and the agency bears the burden of sustaining its action.  *Id.* § 552(a)(4)(B).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule 56 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index of the information withheld, *see Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  The reviewing court must "'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure.'"  *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers*, 140 F.3d at 1080).

### III.  DISCUSSION

The Department asserts that it has fully satisfied its FOIA obligations with respect to the first part of Plaintiffs' FOIA request—that is, the request for PSD-11 and certain related documents—because it "conducted a thorough search for responsive documents and has released to Plaintiffs all responsive information not subject to an exemption under FOIA, including all reasonably segregable information."  Dkt. 19 at 9.  It further asserts that PSD-11 is exempt from

disclosure on three independent grounds: under FOIA Exemption 1, as classified material, and under FOIA Exemption 5, pursuant to the deliberative process privilege and the presidential communication privilege. *See* Dkt. 19 at 19, 22-24, 27-30; Dkt. 19-2 ¶ 54. Apart from those documents produced without redactions, the Department asserts that the other responsive documents are exempt in whole or part under Exemptions 1, 5, and/or 6. *See* Dkt. 19-2 ¶¶ 32-53, 55-104; Dkt. 25-1 ¶¶ 5-24; Dkt. 27-1 ¶¶ 5-10.

Plaintiffs, for their part, cross-move for summary judgment with respect to certain documents that they allege were improperly withheld. *See* Dkts. 23, 35. Plaintiffs' principal contention is that the Department improperly withheld approximately 90 documents, including PSD-11, under Exemption 1. *See* Dkt. 23 at 15-29. In conjunction with this argument, Plaintiffs seek *in camera* review of the classification markings on these documents. *See* Dkt. 22 at 1-2, Dkt. 23 at 26, Dkt. 36 at 1-2. Plaintiffs also argue that PSD-11 is not covered by Exemption 5, *see* Dkt. 23 at 37-48, and seek *in camera* review of its contents to determine whether it contains "statements of <u>existing</u> policy" that are not exempt, *see* Dkt. 36 at 2 (emphasis in original). Plaintiffs further argue, among other things, that the Department improperly classified or upgraded the classification of certain other documents after receipt of Plaintiffs' FOIA request, *see* Dkt. 23 at 18-24; failed to provide affidavits from CIA or USAID officials regarding the 20 documents referred to those agencies for review, *see* Dkt. 35 at 6; improperly withheld certain non-deliberative documents under Exemption 5's deliberative process privilege, *see* Dkt. 23 at 44-45; improperly invoked Exemption 6 to redact identifying information about certain foreign organizations, *see* Dkt. 35 at 3-6; and failed to identify or account for additional responsive documents that are known to exist, *see* Dkt. 23 at 49-51, Dkt. 23-1 ¶¶ 6-11.

The Court begins with the parties' arguments regarding the documents withheld pursuant to Exemption 1.

**A. Exemption 1**

FOIA Exemption 1 covers "matters that are . . . (1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the applicable order is Executive Order No. 13526 ("EO 13526"), 75 Fed. Reg. 707 (Dec. 29, 2009), which establishes procedural and substantive requirements for classification. EO 13526 authorizes the classification of information pertaining to "foreign relations or foreign activities of the United States, including confidential sources," where the "unauthorized disclosure" of such information "could reasonably be expected to cause identifiable or describable damage to the national security." EO 13526 § 1.4(d); *see id.* § 1.2.

Most of the responsive documents withheld in whole or part by the Department, including the document at the heart of this action, PSD-11, were withheld under Exemption 1. As explained in the first Hackett declaration, PSD-11 is

> [a] five-page signed memorandum, dated August 12, 2010, from the President of the United States to a select and limited group of senior foreign policy advisors, cabinet officials, and agency heads, including the Secretary of State, that discusses sensitive national security topics concerning the Middle East and North Africa.

Dkt. 19-2 ¶ 54. PSD-11 instructed these officials to engage in policy discussions and to report the results back to the President. *See* Declaration of Daniel Sanborn, Dkt. 19-1 ¶¶ 6-9. Plaintiffs agree that PSD-11 was "an important step in the creation of the [Administration's] present policy" with respect to the Middle East. *See* Dkt. 1 ¶ 9. The first Hackett declaration explains that PSD-11 was withheld in full because it is a classified document, the disclosure of which "could have the potential to inject friction into, or cause damage to, a number of our bilateral relationships, with countries whose cooperation is necessary to U.S. national security." Dkt. 19-2 ¶ 54. The other responsive documents that were withheld in whole or part under Exemption 1,

all of which are related to PSD-11, were withheld for similar reasons.  *See id.* ¶¶ 32-42; *see also* Dkt. 25-1 ¶¶ 15-25.

According to the Department's declarations, Hackett, who has original classification authority, *see* Dkt. 19-2 ¶¶ 1, 37, "made certain" that the documents withheld under Exemption 1 were properly classified in accordance with the procedural and substantive requirements of EO 13526, *id.* ¶ 37; *see also* Dkt. 25-1 ¶¶ 15-25.  Plaintiffs dispute this, questioning whether many of the documents are "in fact properly classified."  *See, e.g.*, Dkt. 39 at 3 ("plaintiffs have come to doubt that the entirely-withheld documents . . . have all <u>in fact</u> been classified") (emphasis in original).  Plaintiffs offer several arguments applicable to different groups of documents.

### 1. *Classification Markings On Documents Withheld In Full*

Plaintiffs' principal argument is that the documents withheld in full under Exemption 1, including PSD-11, may not bear the required classification markings.  *See* Dkt. 23 at 26-27, Dkt. 33 at 7-12; Dkt. 39 at 3.  Plaintiffs do not cite any evidence that these documents are missing markings, instead relying on the argument that *other* documents withheld in part under Exemption 1 are missing classification markings and, accordingly, the same is likely to be true of the documents withheld in full.  *See* Dkt. 23 at 26 (describing the *Vaughn* index as "<u>unreliable</u> on this point") (emphasis in original).  The Department disputes this, noting that some of the partly-withheld documents were properly marked, *see* Dkt. 25 at 25, and clarifying that other partly-withheld documents were originally classified but erroneously marked as unclassified, *see id.* at 26; Dkt. 25-1 ¶ 8.  As explained in Part A.4 below, the Court concludes that the Department's declarations adequately support the conclusion that the partly-withheld documents are, in fact, classified and entitled to protection.  For present purposes, however, the Court need not resolve that issue.  Given the "presumption of good faith" that attaches to agency declarations in FOIA actions, *see, e.g.*, *SafeCard Servs., Inc.*, 926 F.2d at 1200 (citation omitted), it is sufficient to

conclude that the issues raised with respect to the partly-withheld documents do not support an inference that the *Vaughn* index as a whole is "unreliable" or that the documents withheld in full are not properly marked.

In Plaintiffs' view, the Department's failure to offer additional information about the documents' original classification status (such as the classification date and the name of the original classifier) casts additional doubt on the representations in the Hackett declarations. *See* Dkt. 39 at 3; *see also* Dkt. 23 at 33 (asking "who classified [PSD-11], and thus, who may declassify it?") (emphases in original). But the Department has no obligation to supply the cited information. EO 13526 does not "require that a classifying authority indicate 'the person who classified' the information in question" or "when [that] information [was] originally classified." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 166-67 (D.D.C. 2013). To be sure, "[i]f the agency's release or other representations suggest that information may have been classified after the relevant FOIA request was submitted, the agency has the burden of coming forward with evidence to establish either (1) the information was classified prior to the FOIA request; or (2) the agency satisfied the requirements" applicable to *post-request* classifications, which are set forth in EO 13526 § 1.7(d). *Id.* at 167. But where the record does not indicate that the documents in question were classified after the FOIA request, the Department has no such obligation. *See id.* Because the Department has offered declarations attesting that the classification criteria in EO 13526 are satisfied, it is Plaintiffs' burden to raise a genuine question of fact regarding the documents' classification. *See id.* Plaintiffs' "doubt" on this score, *see* Dkt. 39 at 3, is insufficient.

In the absence of record evidence for their missing-markings theory, Plaintiffs ask the Court to conduct an *in camera* review of the documents withheld in full. Dkt. 22 at 1-2; Dkt. 36

at 1-2; *see also* Dkt. 23 at 54.[3]  District courts have the option to conduct *in camera* review

where "needed in order to make a responsible *de novo* determination on [Defendant's] claims of

exemption," *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978), but the FOIA "by no means

compels the exercise of that option," *Juarez v. Dep't of Justice*, 518 F.3d 54, 59-60 (D.C. Cir.

2008).  "When the agency meets its burden by means of affidavits, *in camera* review is neither

necessary nor appropriate."  *Hayden v. NSA/CSS*, 608 F.2d 1381, 1387 (D.C. Cir. 1979); *see also*

*Juarez*, 518 F.3d at 60.

In this case, *in camera* review is neither necessary nor appropriate.  *In camera* review is a

"last resort," *see Hayden*, 608 F.2d at 1387, *see also Quinon v. FBI,* 86 F.3d 1222, 1228 (D.C.

Cir. 1996), not a fishing expedition.  In the absence of any indicia of bad faith or

misrepresentation on the agency's part, Plaintiffs' speculation about the withheld documents is

insufficient to justify *in camera* review.  If *in camera* review were justified solely on the basis of

Plaintiffs' "doubt," it is difficult to imagine any FOIA action in which such review would not be

warranted.

In addition, Plaintiffs do not offer any reason to believe that the omission of unspecified

markings from the withheld documents would, in these circumstances, "reflect adversely" on the

documents' classification.  *See Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 944

(D.C. Cir. 2013) (holding that in light of the agency's affidavits, omission of certain

classification markings did not require *in camera* review); *see also Lesar v. U.S. Dep't of Justice*,

636 F.2d 472, 485 (D.C. Cir. 1980) (observing that "the consequences of particular violations

may vary" and that some procedural violations "may be insignificant, undermining not at all the

---

[3]  Plaintiffs also ask the Court to review PSD-11's contents for "statements of existing policy" in order to determine whether PSD-11 is subject to the deliberative process privilege under Exemption 5.  *See* Dkt. 36; Dkt. 39 at 4.  As discussed below, the Court does not reach the parties' arguments with respect to the application of Exemption 5 to PSD-11.  Accordingly, this aspect of Plaintiffs' request is denied.

agency's classification decision"). In *Judicial Watch*, for example, the Court of Appeals held that in light of a declaration from an original classification authority asserting that documents were "correctly classified," "any failure relating to application of the classification guide" that may have resulted in the omission of required markings from those documents "would not reflect adversely on the agency's overall classification decision." 715 F.3d at 944. In light of the Hackett declarations, which confirm that the withheld documents are properly classified pursuant to EO 13526, the Court is not persuaded that the absence of unspecified markings would affect the application of Exemption 1 to those documents.[4] Plaintiffs' motions for *in camera* review are, accordingly, **DENIED**.

### 2. *PSD-11*

Plaintiffs offer a number of arguments directed at whether PSD-11 is properly classified. They first contend that "administration officials" discussed "PSD-11 and the results of the study it mandated" with "members of the media." Dkt. 23 at 33-34. Because administration "officials . . . would not discuss classified information" with members of the media, Plaintiffs argue, PSD-11 must have been "no longer classified" by that time (*i.e.*, approximately 2011). *Id*. at 34; *see also id.* at 36 (asking "how White House officials were empowered to discuss an allegedly classified document with the journalists"). The cited evidence, however, does not indicate that administration officials discussed the *contents* of PSD-11, and it is not contended that the *existence* of PSD-11 was classified. Unquestionably, some information about the Administration's foreign policies in the Middle East and North Africa was not classified, and there is no indication that the cited discussions went beyond such information. Plaintiffs do not

---

[4]  To the extent Plaintiffs rely on the absence of markings not required by EO 13526 itself, the Court notes that EO 13526 provides that "[i]nformation assigned a level of classification under [EO 13526] or predecessor orders shall be considered as classified at that level of classification despite the omission of other required markings." EO13526 § 1.6(f).

offer declarations from participants in these discussions, *see id.* at 34 & n.13, and the materials they have submitted do not support a contrary inference.

Plaintiffs next cite a 2011 Washington Post article, which they assert "included what appear to be quotations of phrases from [PSD-11]." Dkt. 23 at 34. But, as the Department notes, "[n]owhere in the article does the author suggest that he obtained an authorized copy of the properly classified PSD-11." Dkt. 25 at 16. Absent such evidence, there is no basis for Plaintiffs' contention that the article demonstrates that the document was never, in fact, classified, and there is no basis to conclude that the government has waived the right to assert Exemption 1. Plaintiffs are correct that, "[i]f the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 620 (D.C. Cir. 2011); *see Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). "For information to qualify as 'officially acknowledged,'" however, "it must satisfy three criteria: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *ACLU*, 628 F.3d at 620-21; *see also Wolf*, 473 F.3d at 378. Here, there is no evidence that the quoted language actually appeared in PSD-11, and there is no basis to conclude that, even if it did, any disclosure was authorized. "[A]n anonymous leak is presumptively an unofficial and unsanctioned act." *Judicial Watch, Inc. v. Dep't of Justice*, 898 F. Supp. 2d 93, 108 (D.D.C. 2012); *see also ACLU*, 628 F.3d at 620, 625; *cf. Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("'[I]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it

officially to say that it is so.'") (quoting *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975)).

More generally, there is no indication here that the government has officially disclosed or acknowledged PSD-11's contents.  Even assuming that government officials discussed the policies resulting from PSD-11 with the media, *see* Dkt. 23 at 33-34, an official disclosure of information "similar" to the exempted information is not enough, *see Wolf*, 473 F.3d at 378 ("[p]rior disclosure of similar information does not suffice"); *ACLU*, 628 F.3d at 625 ("we have repeatedly rejected the argument that the government's decision to disclose some information prevents the government from withholding other information about the same subject"); *Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 65 (D.D.C. 2013) (rejecting the argument that "once a government agency publicly releases any information about a particular issue, that agency has waived its ability to later withhold any other information related to the same issue").

Plaintiffs dispute the need for continuing classification of PSD-11, questioning whether "release of PSD-11 . . . can make things any worse than they are now . . . ."  Dkt. 23 at 32-36. Although "[n]o information may remain classified indefinitely," EO 13526 § 1.5(d), the passage of four years is far from forever, and the Department has met its burden by offering a "logical" or "plausible" explanation for the continuing classification of PSD-11, *see Judicial Watch*, 715 F.3d at 941.  In particular, the Hackett declaration asserts that disclosing PSD-11 would "risk . . . harm to national security," despite the passage of time, and that "the risk of harm . . . is exacerbated by the political and security instability in the region in question."  *See* Dkt. 19-2 ¶ 54.  The declaration explains that

> [t]he disclosure of the information in this document at this time could have the potential to inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national

> security, including some in which public opinion might not currently favor close cooperation with the United States.

*Id.* Agency declarations "concerning the details of the classified status of the disputed record[s]" are accorded "substantial weight" in national security FOIA cases, *see ACLU*, 628 F.3d at 619, and Plaintiffs have not identified any basis for the Court to "second-guess" the Department's account, *see id.* Plaintiffs' assertion that the disclosure of PSD-11 would not "make things any worse than they are now," Dkt. 23 at 32-36, merely constitutes a disagreement on a matter of foreign policy and national security that is committed to the political branches—and not to Plaintiffs or the Court.

Finally, Plaintiffs contend that the Hackett declarations are deficient in two respects. First, Plaintiffs argue, the declarations provide only "formulaic" and "conclusory" justifications for withholding PSD-11 and other documents. *See* Dkt. 23 at 29-32. The Court disagrees. This is not an instance where the agency's declarations merely assert, without explanation or context, that information is exempt or that its disclosure would impair the agency's functions. *See, e.g.*, *Founding Church of Scientology, Inc. v. NSA*, 610 F.2d 824, 831 (D.C. Cir. 1979). The Court of Appeals has held that a similar "level of detail . . . [is] sufficiently specific to qualify for withholding under Exemption 1 in light of the substantial weight owed agency explanations in the context of national security." *See Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, as is the case here, the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Id.* That is the case here.

Second, Plaintiffs contend that the Hackett declarations fail to indicate that, with respect to each document withheld under Exemption 1, the Department balanced the public interest in

disclosure of that document against the need to withhold it.  *See* Dkt. 23 at 27-28.  They cite EO 13526 § 3.1(d), which states, "[i]n some exceptional cases . . . the need to protect [classified] information may be outweighed by the public interest in disclosure of the information."  This argument is also unpersuasive.  As Plaintiffs concede, Hackett asserts that the criteria in EO 13526 have been satisfied.  Plaintiffs cite no authority requiring that an agency expressly confirm that it has conducted a balancing test with respect to each document withheld under Exemption 1, and the Court is aware of none.  Nor would such a *per se* requirement be consistent with the language of EO 13526 § 3.1.  The declassification of information under this provision is discretionary; the provision applies, by its terms, only in "exceptional cases," and it does not alter the criteria for classification.  *See id.*

Because the Court concludes that the Department has adequately justified its application of Exemption 1 to PSD-11, the Court does not reach the parties' arguments regarding the application of the deliberative process privilege and presidential communications privilege to that document.

### 3. *Documents Classified After The FOIA Request*

Plaintiffs next argue that certain documents were not designated as classified until after receipt of Plaintiffs' FOIA request.  *See* Dkt. 23 at 18-24; Dkt. 23-2 ¶ 6; Dkt. 33 at 13-18.  According to Plaintiffs, the Department failed to comply with the more stringent requirements applicable to the classification (or upgrade of classification) of documents in such circumstances.  *Id.*; *see* EO 13526 § 1.7(d).

The Department does not dispute that it classified or upgraded the classification of certain documents subsequent to Plaintiffs' request.  Specifically, Deputy Assistant Secretary for Global Information Services Margaret Grafeld classified two formerly unclassified documents (C05518307 and C05424215).  *See* Dkt. 19-2 ¶ 38; Dkt. 25-1 ¶¶ 10-11; Dkt. 23 at 18.  In

addition, Grafeld "upgraded" the classification of emails that had been previously marked

"unclassified when separated" from their classified attachments (C05423595, C05423598,

C05424194, C05424200, C05424216, C05424217, C05424218, and C05424222).  *See* Dkt. 25 at

29 n.4; Dkt. 25-1 ¶¶ 6-8.[5]

Because these documents were "classified after the relevant FOIA request was

submitted," the Department must show that "the agency satisfied the requirements of [EO 13526]

§ 1.7(d)."  *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 167.  Among other things, section 1.7(d)

provides that previously undisclosed responsive information may be classified after the receipt of

a FOIA request "only if such classification . . . is accomplished on a document-by-document

basis *with the personal participation or under the direction of* the agency head, deputy agency

head, or the senior agency official designated under section 5.4 of this order."  EO 13526

§ 1.7(d) (emphasis added).

Plaintiffs contend that Grafeld lacked the authority to make such classifications because

she is not "the agency head, deputy agency head, or the senior agency official designated under

section 5.4."  *Id.*; *see* Dkt. 23 at 18-21; Dkt. 33 at 13-18.  The Department responds that the

designated "senior agency official" is the Under Secretary of State for Management, *see* Dkt. 19-

2 ¶ 38, 22 C.F.R. § 9.3, who has "authoriz[ed] and direct[ed]" Grafeld to classify information in

accordance with § 1.7(d), *see* Dkt. 25 at 29 ("the senior agency official designated under section

5.4 . . . unquestionably directed Ms. Grafeld to perform the document review contemplated by

1.7(d)"); *Bureau of Administration; Classification Authority Acting Under the Direction of the*

---

[5]  The Department maintains that these emails "were and remain properly classified in the first
instance, notwithstanding that they may have been improperly marked by the individual
senders."  Dkt. 25-1 ¶ 8; *see also id.* ¶¶ 6-7.  According to the Department, Grafeld upgraded the
classifications merely "to avoid any ambiguity" about the documents' status.  *Id.* ¶ 8.  For
present purposes, the Court assumes that the emails were previously unclassified and were
classified by Grafeld pursuant to EO 13526 § 1.7(d).

*Senior Agency Official*, 64 Fed. Reg. 7227 (Feb. 12, 1999) (providing that the Acting Under

Secretary for Management, Patrick F. Kennedy, "authorize[s] and direct[s] the Deputy Assistant

Secretary for Records and Publishing Services" (now Global Information Services) to classify

information pursuant to the analogous provision in the preceding Executive Order); *see also*

*Classified Nat'l Security Information*, 60 Fed. Reg. 19825, § 1.8(d) (Apr. 17, 1995) ("EO

12958"). In Plaintiffs' view, however, this "delegation" is a nullity. *See* Dkt. 23 at 19 & n.2.

They argue that "the senior agency official designated under" § 5.4 may not delegate his

authority to classify or upgrade document classifications under § 1.7(d), because § 1.7(d) "makes

no provision for this authority to be delegated." Dkt. 23 at 19. Plaintiffs also argue that

delegation is contrary to the purpose of § 1.7(d)—that is, to ensure accountability in post-request

classification decisions by limiting the number of agency personnel involved. *Id.*

   The Court is persuaded that § 1.7(d) limits post-request classification authority in order to

prevent abuse and to ensure that a senior government official takes responsibility for intervening

classification decisions that thwart otherwise valid FOIA requests. This conclusion is supported

by a comparison of § 1.7(d) with § 1.3 of EO 13526. Section 1.3 authorizes officials to

"delegate" original classification authority without additionally requiring that those officials

personally participate in or direct each exercise of that classification authority. *E.g.*, EO 13526

§ 1.3(b)(2) (providing that "'Top Secret' original classification authority may be delegated only

by the President, the Vice President, or an agency head or official designated" by the President).

   The Court also concludes, however, that the delegation to Grafeld was, on its face,

consistent with this stringent construction of § 1.7(d). Section 1.7(d) requires that post-request

classification or upgrade decisions be made on a "document-by-document basis with the personal

participation or under the direction of," among others, "the senior agency official designated

under section 5.4 of" EO 13526. Here, the designated "senior agency official"—the Under

18

Secretary of State for Management, *see* 64 Fed. Reg. 7227—directed Grafeld to act as "the official to classify information on a document-by-document basis" under his "direction," and to "keep [him] apprised of actions taken under this authority," *id.* Thus, consistent with § 1.7(d), Grafeld was authorized to make document-by-document classification determinations subject to the "direction" of the designated "senior agency official," the Under Secretary of State for Management.

Other courts in this jurisdiction have rejected arguments indistinguishable from Plaintiffs'. In *Mobley v. CIA*, 924 F. Supp. 2d 24 (D.D.C. 2013), the court concluded that the agency had "complied with Executive Order 13526 § 1.7(d) when it established that Margaret Grafeld . . . , 'personally considered' the withheld portions" of the documents at issue and determined that their classification needed to be upgraded. *See id.* at 58; *see also Darui v. Dep't of State*, 798 F. Supp. 2d 32, 42 (D.D.C. 2011) ("Grafeld's declaration establishes the department's compliance with section 1.7(d)"); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 303-04 (D.D.C. 2013) (requiring additional information to confirm that Grafeld reviewed and classified the documents at issue). Plaintiffs fail to address or distinguish these decisions.

Accordingly, the Court agrees with the Department that Grafeld, who made the classification decisions at issue here, *see* Dkt. 25-1 ¶¶ 8, 10, 11; Dkt. 19-2 ¶ 38, was authorized to classify documents pursuant to EO 13526 § 1.7(d), to the extent she acted consistent with that order's requirements and the terms of the Under Secretary's authorization, *see* 64 Fed. Reg. 7227. The next question is whether she satisfied those requirements when she made the classification decisions at issue here. Plaintiffs argue that Grafeld should be required to explain the timing of the decisions, that is, "what changed" to justify classification of previously unclassified documents. *See* Dkt. 23 at 19. The Court disagrees; EO 13526 § 1.7 imposes no such requirement and Plaintiffs do not cite any authority that does impose such a requirement.

On the other hand, the Court cannot confirm on the present record that Grafeld personally reviewed each document at issue to accomplish the "document-by-document" determination contemplated by § 1.7(d) or that she kept the Under Secretary "apprised of actions taken under [that] authority." *See* 64 Fed. Reg. 7227.  The Department did not submit any declarations from Grafeld, and although the Hackett declarations assert that Grafeld made the classification decisions, they only confirm that Grafeld personally reviewed one of the documents in question (C05518307), *see* Dkt. 19-2 ¶ 38, while asserting that the other documents were reviewed by Hackett or "the Department," *see* Dkt. 19-2 ¶ 98; Dkt. 25-1 ¶¶ 8, 10, 11.  The Department does not contend that Hackett is authorized to classify information under § 1.7(d), and Hackett does not attest that the relevant classifications were all based on a document-by-document review conducted by a person authorized to make such classifications, *see Muttitt*, 926 F. Supp. 2d at 303-04.  Finally, although the Under Secretary "direct[ed]" that Grafeld act as the classifying official, *see* 64 Fed. Reg. 7227, the declarations do not indicate whether the Under Secretary was "apprised of actions taken under [that] authority" so that he could exercise oversight of those actions, *see id.*  Absent some opportunity for actual oversight by the Under Secretary, the Court concludes that there would be no meaningful difference between acting at the Under Secretary's *direction* and acting pursuant to a *delegation* of his authority.  Such a mere difference in nomenclature would not serve the purpose of the limited post-FOIA-request classification authority contained in § 1.7(d).  Moreover, the authorization that Grafeld received from the Under Secretary required that he be kept "apprised" of the actions taken, and thus conditioned the exercise of Grafeld's authority on this requirement.

The Department may, within 60 days, submit additional declarations confirming that Grafeld previously reviewed—or has now reviewed—each document classified in accordance

with § 1.7(d) and that she previously apprised—or has now apprised—the Under Secretary of her decisions.

### 4. *Documents Withheld In Part*

Plaintiffs argue that a number of documents were withheld in part under Exemption 1 even though they were not marked classified or were marked "unclassified." *See* Dkt. 23 at 14-16; Dkt. 23-2 ¶¶ 3-4. In particular, Plaintiffs cite certain cover emails that were unmarked or marked as unclassified when separated from their classified attachments. *See* Dkt. 23 at 15-16; *see also* Dkt. 25-1 ¶¶ 6-8 (2d Hackett Decl.), and certain emails from National Security Council ("NSC") staff that Plaintiffs allege were missing appropriate markings, *see* Dkt. 23 at 15-16.

The Department responded by providing additional explanation for the withholding of the cited documents. *See* Dkt. 25-1 ¶¶ 7-9. As already discussed, the second Hackett declaration asserts that Grafeld upgraded the cover emails' classifications, and in any event, "the marking of [the cover emails] by their authors as wholly unclassified [when separated from their attachments] was a marking error, and not a classification decision," *id.* ¶ 7, and "these documents were and remain properly classified in the first instance," *id.* ¶ 8. The declaration further asserts that the NSC emails were properly designated as classified marked "[SECRET, Record]," which "is the manner in which the NSC marks classified email correspondence." *Id.* ¶ 9.

With respect to the emails for which the Department deemed upgraded classification necessary, as discussed above, the Department may submit additional information to confirm that those documents were—or have now been—correctly classified pursuant to § 1.7(d). Assuming such information is provided, the Court is satisfied that Exemption 1 applies. With respect to the NSC emails, Hackett's confirmation that the documents were properly designated as classified in the first instance suffices to cure any procedural defects in their marking. *See Judicial Watch,*

*Inc.*, 715 F.3d at 943-44; *see also Leopold v. Dep't of Justice*, 2015 WL 5297254, at *11 (D.D.C.

Aug. 12, 2015) ("because [the declarant] holds original classification authority, and has

determined that the document in question is currently and properly classified, the derivative

classification requirements of [section] 2.1 are irrelevant to this case").  Plaintiffs have not

offered any reason to believe that the markings on these documents, even if incorrect, cast doubt

on their classification.  Based upon the Court's review, it appears that this accounts for all the

partly-withheld documents challenged by Plaintiffs as originally unmarked or marked

unclassified.  *See* Dkt. 23 at 53-54.

       Plaintiffs next challenge the Department's decision to redact a number of email subject

lines and titles.  *See* Dkt. 23 at 24-25, 53; Dkt. 23-2 ¶¶ 7-8.  Plaintiffs argue that regulations

issued by the Information Security Oversight Office ("ISOO") disfavor the classification and

redaction of email subject lines and attachment titles.  *See* Dkt. 23 at 24 (citing ISOO guidance

and 32 C.F.R. § 2001.23).  But Plaintiffs do not identify any authority that prohibits either type

of redaction.  To the contrary, the guidance cited by Plaintiffs acknowledges that the title of an

attachment may, in some instances, be classified.  *See* Dkt. 23 at 25, Dkt. 23-2 at 113 ("most

titles should be unclassified, but this example shows an attachment with a classified title").

Plaintiffs contend that as a general matter, email subject lines and attachment titles are too brief

to require classification or redaction.  But they cite no authority for the proposition that

Exemption 1 does not apply to brief portions of text or that such redactions are subject to

heightened review.  The Department has provided explanations for the redacted subject lines and

attachment titles.  *See* Dkt. 19-2 ¶¶ 96, 98; Dkt. 25-1 ¶ 7 & n.4.  Plaintiffs' speculation that these

redactions were nonetheless unwarranted is insufficient to demonstrate a dispute of material fact.

       Plaintiffs also argue that certain information was withheld even though it appears to be

the same as information disclosed elsewhere.  *See* Dkt. 23 at 48; Dkt. 23-1 at ¶ 13.  The second

Hackett declaration asserts, however, that "I have reviewed each of the documents Plaintiffs challenge . . . and verified that the redacted content of these documents was not previously released." Dkt. 25-1 ¶ 7 n.2. Once again, Plaintiffs' argument fails because they offer no basis, other than speculation, to disbelieve the Hackett declaration. That speculation is insufficient to rebut the "presumption of good faith" that attaches to agency declarations in FOIA actions. *See SafeCard Servs.*, 926 F.2d at 1200.

Finally, Plaintiffs challenge the redaction of notations in portion-marked paragraphs that indicate the level of classification of that paragraph. *See* Dkt. 23 at 31; Dkt. 23-2 ¶¶ 9-10 (challenging redactions in C05518351 and C05518358). In the cited documents, entire paragraphs have been redacted together with the associated portion markings. *See* Dkt. 23-2 at 41-45. The portion markings are not in isolation responsive to Plaintiffs' request, but the thrust of Plaintiffs' argument, even if not made explicit, appears to be that the redacted portion markings would reveal that the redacted paragraphs are not classified and accordingly not exempt from disclosure. The Department responds that the notations or portion markings were not disclosed independent of the associated paragraphs because the markings would not be meaningful in isolation (and could be misleading), and in any event, Hackett has confirmed that the redacted information is properly classified and that no additional information is segregable. *See* Dkt. 25-1 ¶ 12 ("these documents were originally designated, and remain currently designated, SECRET/NOFORN"); Dkt. 25 at 32-33.

The Court concludes that in light of the mismarking issues raised to date, it is fair for Plaintiffs to request access to the actual portion markings in these two documents. Even if the Department is correct that the portion markings are minimally meaningful, they are concededly not classified, *see* Dkt. 25-1 ¶ 12, and disclosure of the markings will not be unduly burdensome. The Department's only other argument is that the isolated markings "may be misleading," *see*

Dkt. 25 at 33, but it does not explain why.  Accordingly, the Department is directed to disclose the unclassified portion markings redacted from these two documents (C05518351 and C05518358).

### 5.  *Documents Referred To CIA And USAID*

Plaintiffs argue that with respect to the 18 documents that were withheld in whole or part after consultation with the CIA and USAID, the Department has not met its burden because "neither the CIA nor [the] USAID has submitted sworn declarations with statements from personal knowledge."  Dkt. 35 at 6.  Plaintiffs contend that the Department is required to provide declarations from officials at CIA and USAID to substantiate these decisions.  *Id.*  Although the CIA documents were withheld in full under Exemption 1, while the USAID document was withheld in part under Exemption 6, Plaintiffs make the same argument with respect to both agencies.

There appear to be two aspects to Plaintiffs' argument.  First, Plaintiffs argue that the Department is "required" to submit declarations from the agencies that "originated" the documents.  *See* Dkt. 35 at 6-7.  The Court is not aware of any authority holding that an originating agency is "required" to submit a declaration to justify another agency's withholding decision.  The only authority Plaintiffs cite for this "requirement" is the Department of Justice's Guide to the FOIA ("FOIA Guide"), which states that "'ordinarily'" the referring agency "'includ[es] with its own court submissions, declarations from those originating agencies which address any withholdings made in the referred records.'"  Dkt. 35 at 7 (quoting FOIA Guide); *see also* Dkt. 35 at 16.  The FOIA Guide is not legally binding, and in any event, the quoted language does not *require* agencies to submit declarations from officials of other agencies with which they have consulted, even if they "ordinarily" do so, *see id.*; *see also* Dkt. 39 at 8.  Plaintiffs also argue that EO 13526, by requiring agencies to "refer copies of any request and the

pertinent documents to the originating agency," *see id.* § 3.6(b), impliedly requires an originating

agency to provide declarations substantiating the withholding decision, *see* Dkt. 39 at 6-7.  The

Court does not agree; the cited language only requires referral, and it is undisputed that the

documents were referred.

Second, Plaintiffs contend that Hackett is "incompetent to submit a Rule 56 declaration

justifying those [other] agencies' withholding decisions," and that insofar as his declarations rely

on information obtained through consultation with other agencies they are "hearsay."  Dkt. 35 at

8.  But courts in this jurisdiction have long held that FOIA declarants may rely on "information

they have obtained in the course of their official duties."  *See, e.g.*, *Barnard v. DHS*, 598 F.

Supp. 2d 1, 19 (D.D.C. 2009); *Cucci v. DEA*, 871 F. Supp. 508, 513 (D.D.C. 1994); *Inst. for

Policy Studies v. CIA*, 885 F. Supp. 2d 120, 133 (D.D.C. 2012).  The Court agrees with the

Department that Hackett—an original classification authority who is familiar with FOIA

procedures and has reviewed the documents in question—may make a decision based in part on

information obtained in the course of his official duties without triggering a need for additional

declarations from the individuals he consulted.

To be sure, agencies must provide the reviewing court with sufficient information to

justify their withholding decisions.  In some situations, that may require additional declarations

from other agencies.  But Plaintiffs do not identify any information essential to the Court's

review that can only be obtained from CIA or USAID officials.  Hackett, moreover, did not

merely relay withholding determinations made by another agency without providing an

explanation for those determinations.  He made the determination to apply Exemption 6 "in

consultation with" USAID, *see* Dkt. 27-1 at ¶ 6, and he "concu[rred] in the [CIA's]

determination" that the CIA documents related to intelligence activities, on which basis the

documents were withheld under Exemption 1, *see* Dkt. 25-1 ¶ 24.  The Department has met its

burden.

*   *   *

With the exception of the need for further information relating to the Department's post-

request classification decisions, the Court concludes that the Department has adequately

supported its application of Exemption 1 to the documents withheld under that exemption,

including PSD-11.  The Court next considers the parties' arguments with respect to other

documents withheld under Exemptions 5 and 6.

## B.  Exemption 5: Deliberative Process Privilege

FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency," 5

U.S.C. § 552(b)(5), and "encompasses the privileges that the Government could assert in civil

litigation against a private litigant," including "the deliberative process privilege" and "the

presidential communications privilege," *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir.

2014).  In addition to PSD-11, the Department has invoked the deliberative process privilege as a

basis for withholding numerous documents relating to PSD-11 in whole or part.  Plaintiffs argue,

however, that PSD-11 and approximately 20 other documents are not exempt.  *See* Dkt. 23 at 44-

45, 54.  Because the Court concludes that PSD-11 was properly withheld under Exemption 1, it

need not reach the parties' arguments with respect to that document.  For the reasons explained

below, the Court concludes that Exemption 5 applies to the other documents challenged by

Plaintiffs.

"[T]he deliberative process privilege covers deliberative, pre-decisional communications

within the Executive Branch," *Nat'l Sec. Archive*, 752 F.3d at 462, including "'documents

reflecting advisory opinions, recommendations and deliberations comprising part of the process

by which governmental decisions and policies are formulated,'" *Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  "To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter. . . . The term 'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue."  *Nat'l Sec. Archive*, 752 F.3d at 463 (citations omitted).

The Hackett declaration explains that PSD-11 "directed certain high-ranking officials, including officials at the Department, to assist in policy deliberations on sensitive national security topics," which in turn prompted agency "deliberations about how best to respond to the President's inquiry," "required relevant subject-matter experts within the Department to candidly evaluate particular foreign policy approaches, weigh various foreign policy considerations, and make recommendations for policy priorities," and "precipitated an internal dialogue among officials about the best way to respond to the inquiry set forth in the PSD."  Dkt. 19-2 ¶ 45; *see also id.* ¶ 47.  "Collectively, this internal evaluation, commentary, and dialogue is 'predecisional,' *i.e.*, antecedent to the adoption of a policy, and (b) deliberative, i.e., reflective of the give-and-take of the consultative process, with regard to the shaping of the Department's response to the policy inquiry set forth in the PSD."  Dkt. 19-2 ¶ 48.  The Department withheld numerous documents produced during this process in whole or part under Exemption 5.  *See generally* Dkt. 19-2 ¶¶ 55-104.

Plaintiffs argue that approximately 20 of these documents are not "deliberative" in nature, or at least, not wholly so, because they contain factual information.  They point to four paragraphs in the Department's *Vaughn* index indicating that certain documents withheld in full or in part under Exemption 5, such as a "planning document" and draft papers, included factual

or administrative information.  *See* Dkt. 23 at 45 (citing Dkt. 19-2 ¶¶ 55, 80, 84, 99); *id.* at 54.

Notably, the documents described in these four paragraphs were all classified.  Indeed, all the

documents challenged by Plaintiffs that were withheld in full under Exemption 5 were also

withheld in full under Exemption 1, *see id.*; Dkt. 19-2 ¶¶ 55, 80, 84, including the "planning

document" and two draft papers cited in Plaintiffs' briefs, *see* Dkt. 23 at 45.  As the Court has

already upheld the Department's application of Exemption 1 to the documents withheld in full

under Exemption 1 (with the exception of the documents classified subsequent to Plaintiffs'

FOIA request, which are not at issue here), *see supra*, Part A, the Court need not reach the

parties' additional arguments with respect to the documents withheld in full under Exemption 5.

All but two of the challenged documents withheld in part under Exemption 5 were also

withheld in part under Exemption 1, *see* Dkt. 23 at 54; Dkt. 19-2 ¶¶ 99, 101, including the email

exchanges cited in Plaintiffs' brief, *see* Dkt. 23 at 45 (citing Dkt. 19-2 ¶ 99).  As it is unclear

whether the same information was withheld under both exemptions, however, the Court will

consider the application of Exemption 5 to all these challenged documents.  They include "inter-

agency email exchanges concerning the scheduling [of] meetings . . . and the review of papers

produced in connection with the requests made by the President in PSD-11," Dkt. 19-2 ¶ 99, and

"email exchanges concerning various aspects of the deliberations undertaken in response to PSD-

11," *id.* ¶ 101.  The documents were withheld in part because release would "chill the open and

frank exchange of idea and recommendations" within the Administration during the development

of "strategic policy guidance."  *Id.* ¶¶ 99, 101.  Plaintiffs do not dispute that these emails were

part of a deliberative policy development process, but contend that they should have been

released in full because they are not themselves deliberative.  Dkt. 23 at 45.

As a threshold matter, the Hackett declaration establishes that these emails were reviewed

for reasonably segregable non-exempt material and that all such material was released.  Dkt. 19-

2 ¶¶ 99, 101.  But Plaintiffs appear to assert that there cannot be *any* deliberative aspect to the emails, and they cannot be withheld, even in part, because the declarations do not describe the emails as "subjective utterances."  Dkt. 23 at 45.  Even assuming the material withheld under Exemption 5 was factual, which is not at all clear, Plaintiffs' reading of Exemption 5 is too strict. "While it is true that 'purely factual material usually cannot be withheld under Exemption 5,' it can be where 'it reflects an exercise of discretion and judgment calls' and where its exposure would enable the public to probe an agency's deliberative processes."  *Leopold v. CIA*, 2015 WL 1445106, at *6 (D.D.C. Mar. 31, 2015) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)) (alterations omitted).  "[T]he legitimacy of withholding does not turn on whether the material is purely factual in nature . . . but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild*, 641 F.3d at 513.  Plaintiffs have not given the Court any basis to disturb the Department's determination that the material withheld under Exemption 5 would "reveal" inter-agency deliberative processes or "chill the open and frank exchange of ideas" within the Administration.  *See* Dkt. 19-2 ¶¶ 99, 101; *see also id.* ¶¶ 46-49.  Accordingly, the Court upholds the application of Exemption 5 to the challenged documents.

## C.  Exemption 6

FOIA Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Department withheld portions of approximately 20 documents pursuant to Exemption 6.  *See* Dkt. 19-2 ¶ 20; Dkt. 27-1 ¶¶ 5, 6.  Plaintiffs challenge only one of those documents:  a 13-page document originating with USAID (C05518306), which was redacted to remove "the names and identifying details of certain local organizations that have received U.S.

support in order to protect the personal privacy interests of individuals who work for those

organizations." Dkt. 27-1 ¶ 6 (Third Hackett Decl.).

The third Hackett declaration explains that the local organizations named in the redacted

document are active in countries "where the public or the host government may not favor

cooperation with the United States." *Id.* ¶¶ 6, 8. Thus,

> [i]t is the Department's judgment (in consultation with USAID) that there is a
> reasonable likelihood that the country involved, or individuals within that country,
> would take retributive measures against individuals within these organizations for
> their cooperation with the United States, if that cooperation were to become
> public. Given the nature of the particular programs involved, including their size,
> release of the names of the organizations or other identifying details, including
> descriptions of the organizations and their programs, would be tantamount to
> releasing the identities of the individuals involved, who remain located in the host
> country. Such revelation could subject these individuals to intimidation,
> harassment, or violence, possibly including death, if the information were to be
> made public. The significant privacy interests of these individuals outweigh any
> public interest in disclosure of the limited information redacted.

*Id.* ¶ 6.

To determine whether Exemption 6 applies, a reviewing court must first ask whether the

records are "similar" to "personnel and medical files" within the meaning of Exemption 6, that

is, whether the information requested "applies to a particular individual." *New York Times Co. v.

NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc). If this "minimal" threshold is satisfied,

*id.*, the reviewing court then asks whether disclosure "would constitute a clearly unwarranted

privacy invasion," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). In

making this inquiry, the court must balance the individual privacy interest against "the citizens'

right to be informed about what their government is up to." *Sussman v. U.S. Marshals Serv.*, 494

F.3d 1106, 1115 (D.C. Cir. 2007). "Where there is a substantial probability that disclosure will

cause an interference with personal privacy, it matters not that there may be two or three links in

the causal chain." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 878 (D.C.

Cir. 1989).

Plaintiffs correctly contend that "organizations have no privacy interests" under Exemption 6. *See* Dkt. 35 at 8-9. The Department, relying on *Bigwood v. USAID*, 484 F. Supp. 2d 68, 76-77 (D.D.C. 2007), responds that the privacy interests implicated here belong to the individuals employed by the named organizations, *see* Dkt. 38 at 11; *Bigwood*, 484 F. Supp. 2d at 76-77. *Bigwood* held that Exemption 6 authorized redaction of "the organizational identities of . . . USAID grantees" in Venezuela, *id.* at 76, based on "declarations that detail the potential harm to the employees" of those organizations "due to their connection with the United States government," *id.* at 77 & n.4. The Department argues that here, as in *Bigwood*, naming the organizations could place the individuals within those organizations at risk of "intimidation, harassment, or violence, possibly including death." Dkt. 27-1 ¶¶ 6, 8; *see Bigwood*, 484 F. Supp. 2d at 77 & n.4.

Assuming for the moment that the disclosure of information about the organizations would identify the individuals involved, the Court has little trouble concluding that disclosure "would constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders*, 309 F.3d at 32. Plaintiffs appear to agree that employees of organizations that cooperate with the United States may be subject to retaliation or "endangered" based on their associations with the United States. *See* Dkt. 35 at 11. Here, however, they speculate that identities of the relevant organizations and the individuals within those organizations are already known by those who might pose a threat to them. *Id.* at 12-13. Although not entirely clear, Plaintiffs' argument appears to be that Exemption 6 does not apply because these individuals are already in danger and no additional harm will flow from disclosure.

The Court does not agree that the risk to the relevant individuals is resolved. Plaintiffs speculate, at best, that they have identified the organizations in question, *see id.* at 11, and even were Plaintiffs correct, that would not mean that disclosure would not affect additional

individuals or lead to other reprisals, including (according to the Department) bodily harm or even death, *see* Dkt. 27-1 ¶¶ 6, 8.

On the present record, however, it is a closer question whether the organizations' identifying details constitute information "similar" to personnel files or medical records within the meaning of Exemption 6.  This requirement is "minimal": "the threshold . . . is crossed if the information merely 'applies to a particular individual,'" even if that information is not "intimate." *New York Times*, 920 F.2d at 1006 (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).  Exemption 6 covers "not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[ ] a palpable threat to privacy.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).  Thus, the Court of Appeals has held that Exemption 6 may extend to financial information "easily traceable to an individual," *see New York Times*, 920 F.2d at 1006, to information about small family farms that "in some cases [would] allow for an inference to be drawn about the financial situation of an individual farmer," *see Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1228-30 (D.C. Cir. 2008), and to "the names and addresses of persons and businesses associated with" the development and manufacture of a controversial abortion drug, *see Judicial Watch*, 449 F.3d at 153.  On the other hand, the Court of Appeals has observed that the "[t]he financial records of a large corporation" would not qualify for withholding under Exemption 6 "because they do not contain information 'personal to any particular individual.'"  *New York Times*, 920 F.2d at 1006 (quoting *Washington Post Co.*, 456 U.S. at 602 n.4).

In *Bigwood*, the district court agreed with USAID that disclosing identifying information about local organizations would be "tantamount to releasing the identities of . . . individual[ ]" employees, *see* 484 F. Supp. 2d at 76 (quotation marks and citation omitted), and that in light of

the "strong[ ] privacy interest in avoiding physical danger," those individuals had a clear privacy interest in the nondisclosure of such information, *see id.* at 77 (citing *Judicial Watch*, 449 F.3d at 153). Thus, the court concluded that "the organizational identity of USAID grantees is information . . . [that] in this case 'applies to a particular individual,' and thus the records requested are 'similar files' which may be protected from disclosure by Exemption 6 of the FOIA." *Id.* at 76. The Department asserts that the same is true here:  disclosing identifying information about the organizations would be "tantamount" to disclosing the identities of the individuals within those organizations, placing the individuals in physical danger. Dkt. 27-1 ¶ 6.

The Court notes that there are differences between this case and *Bigwood*. In particular, the organizations in *Bigwood* were "very small," with fewer than ten employees each, *see* 484 F. Supp. 2d at 76, while here, it is unclear how large the organizations are. The Department asserts, however, that it made the withholding decision "in consultation with USAID" based on "the nature of the particular programs involved, including their size," *see* Dkt. 27-1 ¶ 6, and against the backdrop of the political climate in the host countries, *id.* The Department and USAID are far better positioned than Plaintiffs or the Court to determine whether, on these facts, disclosure would lead to the identification of particular individuals in those countries. As the Court of Appeals has observed in a different context, "[i]n the absence of any conflicting evidence, we give some credence to the agency's familiarity with" whether a disclosure "would lead to identification of" the individuals in question. *Carter*, 830 F.2d at 391-92 (affirming application of Exemption 6 to information from patent attorney misconduct investigations, based on "the [Patent and Trademark Office's] reasonable determination that release of [that information] would identify patent attorneys who have been under investigation"). Here, as in *Carter*, the FOIA requester has not presented evidence "suggesting that the disclosure . . . would not identify" those individuals. *Id.* And here, the Department has particular expertise regarding

"local organizations that have received U.S. support," Dkt. 27-1 ¶ 6, and the relative risk of identification of individuals associated with those organizations.

For the reasons given, the Court concludes that—although it is a close question—the Department has met its burden with respect to the application of Exemption 6 to this document.

**D.  "Unaccounted-For" Documents**

The Court next turns to Plaintiffs' motion for partial summary judgment with respect to several allegedly "unaccounted-for" responsive documents "which are known to exist."  *See* Dkt. 23 at 49-51.  These "unaccounted-for" documents include documents that Plaintiffs argue resulted from the PSD-11 process, specifically Presidential Policy Directive 13 ("PPD-13"), a "State paper" referenced in emails from an NSC employee; a paper "referenced" by "Mr. Howard"; a "report to the President" described in a New York Times article by Mark Landler; and a "2011 report on Islamic movements which might take power in the Middle East, reported in the Washington Post."  *See* Dkt. 23-2 ¶¶ 18-20.  Plaintiffs also ask for "the attachments referenced in the released emails."  *See* Dkt. 23 at 49-51.  Finally, Plaintiffs ask for the "transmittal memorandum [that] allegedly accompanied PSD-11," *id.*, which is referenced in the Sanborn declaration, *see* Dkt. 19-1 (Sanborn Decl.).

The Department argues that PPD-13 is not responsive.  *See* Dkt. 25-1 ¶¶ 13, 14 ("PPD-13 was not generated pursuant to the mandates of PSD-11" and "is not responsive to a reasonable interpretation of Plaintiffs' FOIA request").  Plaintiffs speculate that PPD-13 was generated as a result of deliberations pursuant to PSD-11, *see* Dkt. 23 at 49, but they do not identify any factual support for that assertion.  With respect to the other documents allegedly generated in response to PSD-11—such as the "State paper" and the "report to the President"—Plaintiffs provide no basis to conclude that these vague descriptions do not refer to any documents already accounted for in the Hackett declarations.  Nor, for the most part, is there information suggesting that the

Department possesses or controls copies of the "referenced" documents; if it does not possess or control them, it is not required to locate and release them. *See Lewis v. U.S. Dep't of Justice*, 867 F. Supp. 2d 1, 13 (D.D.C. 2011); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 138 (1980) ("possession or control is a prerequisite to FOIA disclosure"). Moreover, even assuming that the Department might somewhere possess copies of some of these documents, an agency is not required to demonstrate that each and every responsive document was actually located or that no other relevant documents exist. *See Perez-Rodriguez v. U.S. Dep't of Justice*, 888 F. Supp. 2d 175, 182 (D.D.C. 2012) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). It is only obligated to "conduct[ ] a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. The Department has provided declarations detailing its search, *see* Dkt. 19-2 ¶¶ 14-30, and Plaintiffs have not objected to the methods or scope of the search. The failure of the search to turn up a given document—even if that result is "unexpected"—"does not alone render a search inadequate." *Ancient Coin Collectors Guild*, 641 F.3d at 514; *see also id.* ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (quotation marks and citation omitted). Similarly, with respect to the email attachments, Plaintiffs offer no information suggesting that the attachments were identified as responsive in the Department's search but nonetheless withheld, or that the Department's search was deficient because it did not find the attachments.

In their motion for summary judgment, Plaintiffs argued that the transmittal memorandum described in the Sanborn declaration "is clearly responsive to plaintiffs' FOIA request." Dkt. 23 at 38; *see also* Dkt. 19-1 ¶¶ 4-5 (Sanborn Decl.) (stating that the transmittal memorandum was from the Executive Secretary of the NSC to agencies receiving copies of PSD-11). In response, the Department submitted a second declaration from Hackett asserting

that any transmittal memorandum, "to the extent that it exists, would not be responsive."  *See*

Dkt. 25 at 39-40; Dkt. 25-1 ¶ 13.  The Department notes that Plaintiffs asked for PSD-11 itself,

"[d]ocuments and other information created or compiled by the State Department which were

utilized internally . . . , in the creation of PSD-11," and "[d]ocuments and other information

created or compiled by the State Department which were generated pursuant to the mandates of

PSD-11," Dkt. 1 at 7, and argues that the transmittal memorandum does not fall into those three

categories.

The Court concludes that the Department's reading of the FOIA request is reasonable.

Plaintiffs argue that the memorandum is "responsive" because it was "produced . . . after the date

of PSD-11 to transmit the PSD to designated recipients," Dkt. 23 at 38, *see also* Dkt. 33 at 24,

but a transmittal document from the NSC to the agencies does not fall within the three categories

identified in Plaintiffs' request.  Although the Court of Appeals has repeatedly cautioned that "an

agency has a duty to construe a FOIA request liberally," *Nation Magazine, Washington Bureau*

*v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); *see also LaCedra v. Executive Office*

*for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003), the agency is not obligated to rewrite the

request to ask for more than the requester did.  Plaintiff Canning, who has some experience filing

FOIA requests, drafted the request to ask for the specific three categories of information

identified above—not for *all* information relating in any way to PSD-11.  He could have drafted

the request broadly to encompass other documents related to PSD-11, but chose not to do so.

Accordingly, the Court agrees with the Department that the transmittal memorandum is not

responsive and need not be disclosed.

## E.  Segregability

Finally, the Court reviews the Department's determination that the documents withheld in

full under the exemptions already discussed, including PSD-11, did not contain reasonably

segregable information.  *See Sussman*, 494 F.3d at 1116 ("Before approving the application of a

FOIA exemption, the district court must make specific findings of segregability regarding the

documents to be withheld.").  The FOIA requires agencies to disclose "[a]ny reasonably

segregable portion" of a responsive record "after deletion of the portions which are exempt."  5

U.S.C. § 552(b).

Where, as here, the agency determines that entire documents must be withheld because

non-exempt information is not segregable, the agency bears the burden of "show[ing] with

'reasonable specificity' why the documents cannot be further segregated."  *Armstrong v. Exec.*

*Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).  The agency may meet this burden by

providing a "'detailed justification' for . . . non-segregability."  *Johnson v. Exec. Office for U.S.*

*Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of*

*the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

The Court concludes that the Department has met this burden.  The Hackett declarations

state that reasonably segregable portions of the responsive documents have been released.  *See*

Dkt. 19-2 ¶ 37, ¶¶ 54-104; Dkt. 25-1 ¶¶ 9, 26; Dkt. 27-1 ¶ 11.  The information in the

declarations substantiates with "reasonable specificity," *see Armstrong*, 97 F.3d at 578, that the

Department has reviewed the documents for segregable material as required by the FOIA, *see*

*Loving,* 550 F.3d at 41 (affirming district court's decision to deny *in camera* review based on

"the description of the document set forth in the *Vaughn* index and the agency's declaration that

it released all segregable material").

Aside from their arguments with respect to the documents withheld in part under

Exemption 1, *see supra* Part A.4, and certain documents withheld as deliberative under

Exemption 5, *see supra* Part B, Plaintiffs do not offer any arguments suggesting that reasonably

segregable material has not been released.  As already discussed, the Court directs the

Department to disclose the portion markings in two documents, but finds Plaintiffs' remaining arguments unpersuasive.  The Court sees no other indications in the record that the Department failed to disclose reasonably segregable non-exempt material from any other documents withheld under Exemptions 1, 5, or 6.

*   *   *

For the reasons given, the Court grants Defendant's motion for summary judgment in part and denies it in part.  The Department is directed to supplement the record with additional information confirming that Grafeld reviewed the documents classified as required by § 1.7(d) and apprised the Under Secretary of those actions.  The Court grants Plaintiffs' cross-motion for summary judgment (Dkt. 23) in part and denies it in part.  The Department is directed to disclose the portion markings redacted from documents C05518351 and C05518358.  Plaintiffs' second cross-motion for summary judgment (Dkt. 35) and Plaintiffs' motions for *in camera* review (Dkts. 22, 36) are denied.

## IV.  CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Department's motion for partial summary judgment (Dkt. 19) is **GRANTED** in part and **DENIED** in part.  The Department may supplement the record with information addressing the issues identified in this Memorandum Opinion within 60 days.  It is further

**ORDERED** that Plaintiffs' cross-motion for partial summary judgment (Dkt. 23) is **GRANTED** in part and **DENIED** in part.  The Department is directed to disclose the portion markings redacted from documents C05518351 and C05518358.  It is further

**ORDERED** that Plaintiffs' second cross-motion for summary judgment (Dkt. 35) and Plaintiffs' motions for *in camera* review (Dkts. 22, 36) are **DENIED**.

It is **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 30, 2015